

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

**RECEIVED** EAA

MAY 29 2015
May 29 2015
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

*Aaron Miller*

_____

(Enter above the full name
of the plaintiff or plaintiffs in
this action)

15cv4795
Judge Samuel Der-Yeghiayan
Magistrate Judge Geraldine Soat Brown
PC8

vs.                                    Case N
(To b

*City of Chicago, Chicago Police Dept.*
*P.O. Figueroa, Senelywstar #15428*
*P.F.T. Niwlach Zbigniewstar #17629*
*Sgt Zaher Nicholas star #914*
*Nicholas Roti cheif of organized crime*
*Office Decook star #5300*

(Enter above the full name of ALL
defendants in this action. **Do not**
use "et al.")

**CHECK ONE ONLY:**

✓ _____  **COMPLAINT UNDER THE CIVIL RIGHTS ACT, TITLE 42 SECTION 1983**
U.S. Code (state, county, or municipal defendants)

_____  **COMPLAINT UNDER THE CONSTITUTION ("BIVENS" ACTION), TITLE
28 SECTION 1331 U.S. Code (federal defendants)**

_____  **OTHER** (cite statute, if known)

*BEFORE FILLING OUT THIS COMPLAINT, PLEASE REFER TO "INSTRUCTIONS FOR
FILING." FOLLOW THESE INSTRUCTIONS CAREFULLY.*

**I.    Plaintiff(s):**

A.    Name: _Aaron Miller_

B.    List all aliases: _N/A_

C.    Prisoner identification number: _M43843_

D.    Place of present confinement: _PinckNeyville Illinoise_

E.    Address: _P.O. Box 999 62274_

(If there is more than one plaintiff, then each plaintiff must list his or her name, aliases, I.D. number, place of confinement, and current address according to the above format on a separate sheet of paper.)

**II.    Defendant(s):**
(In A below, place the full name of the first defendant in the first blank, his or her official position in the second blank, and his or her place of employment in the third blank. Space for two additional defendants is provided in B and C.)

A.    Defendant: _City of Chicago_
Title: _Chicago Police Department_
Place of Employment: _N/A_

B.    Defendant: _Jenelyn Figuroa #15428_
Title: _Police officer_
Place of Employment: _Chicago Police Dept._

C.    Defendant: _Niwdach ZbigNiew star 17629_
Title: _Police officer_
Place of Employment: _Chicago Police Dept. City of Chicago_

(If you have more than three defendants, then all additional defendants must be listed according to the above format on a separate sheet of paper.)

2

Revised 9/2007

Additional defendants that I would like added to this case, because their Wasn't Enough room on the Page Where defendants Are located.

1. Grace Foster chicago Police 10190's Star Number Works for city of chicago
2. Lt. Cathleen Rendon chicago Police city of chicago star #722
3. Detective William Fielder chicago Police city of chicago star #20532
4. Chief of organized Crime Nicholas Roti
5. Marvin Stler cheif of Administration
6. Andrea Stoutenbourgh Coordinator of I.P.RA. city of chicago
7. Kristi Lyons Investigator for I.P.RA city of chicago
8. Alexis Ameyngea star 022
9. Tomas Byne Chief of Detective Division *And OCIC Alexander cra.45 chicago Police
10. The following Work for States Attorney office
   States Attorney Anita Alvarez 300 Daley Center Chicago, IL, 60602
   Asst. states Attorney Lynn McCarthy 300 Daley center chicago, IL. 60602
   Asst. states Attorney Ruth Gudino 300 Daley center chicago, IL 60602
   Asst. State Attorney Shawn McCarthy 300 Daley center chicago, IL 60602

   This Judge Works A Cook County Court
   Lawrence Flood 2600 S. California
   Finally Defense Attorney Ruldk Richard B. Friedman
   53 w Jackson chicago, IL 60604 suit 1260

**III.** List ALL lawsuits you (and your co-plaintiffs, if any) have filed in any state or federal court in the United States:

A. Name of case and docket number: _AARON Miller V, TOM DART_
_14 CV 0003 1_

B. Approximate date of filing lawsuit: _Jan, 2, 2014_

C. List all plaintiffs (if you had co-plaintiffs), including any aliases: _N/A_

D. List all defendants: _TOM DART CINDY Klien, Supt. Reyes_
_Dr. MaSure, SHerf D'uRAN, Nurse Jefferson_

E. Court in which the lawsuit was filed (if federal court, name the district; if state court, name the county): _Federal Court NorthEastern District of Illinoise Eastern Division_
_Northern_

F. Name of judge to whom case was assigned: _Juge Gottschall_

G. Basic claim made: _Deliberate Indifference_

H. Disposition of this case (for example: Was the case dismissed? Was it appealed? Is it still pending?): _Still pending_

I. Approximate date of disposition: _UNKNOWN_

**IF YOU HAVE FILED MORE THAN ONE LAWSUIT, THEN YOU MUST DESCRIBE THE ADDITIONAL LAWSUITS ON ANOTHER PIECE OF PAPER, USING THIS SAME FORMAT. REGARDLESS OF HOW MANY CASES YOU HAVE PREVIOUSLY FILED, YOU WILL NOT BE EXCUSED FROM FILLING OUT THIS SECTION COMPLETELY, AND FAILURE TO DO SO MAY RESULT IN DISMISSAL OF YOUR CASE. CO-PLAINTIFFS MUST ALSO LIST ALL CASES THEY HAVE FILED.**

3

Revised 9/2007

**IV.    Statement of Claim:**

State here as briefly as possible the facts of your case.  Describe how each defendant  is
involved. including names. dates. and places.  Do not give any legal arguments or cite any
cases or statutes.  If you intend to allege a number of related claims, number and set forth
each claim in a separate paragraph.  (Use as much space as you need.  Attach extra sheets
if necessary.)

I'm filing suit under Rico "18 USC 1961-1963 (1994 AND Sup III) based on the fact that the Chicago Police have shown a pattern of Racketeering as their conduct through an enterprise has caused injury to the plaintiffs bussiness or property, by participating in a net or web of either obstruction of Justice Gross Ex-cessive force, forgery, fabricating Evidence, Murder, Conduct that could cause an unlawful homicide, false Arrest threats of force, Counterfeiting, And force to obtained an official Act. The police officers that were involved with knowing about or Actually Acting in these crimes or Aiding and Abeting to Conceal the fact that officer Figueroa, Jevelyn star # 15428 shot plaintiff six ~~times~~ With a weapon that was not registered to officer Figueroa but registered to her friend Lenora Dumag, yet was Reported lost or Stolen because at Some point it was Recovered sept-30-2014. The officers Are as follows officer Grace Foster star # 10790 gave false statement pertaining to what happened, during the situation. P.F.I. Niewdach, Zbigniew star # 7769 is the forensic investigator that signed off on the inventory sheet pertaining to the ~~illen~~ illegal weapon, that said the weapon With Serial # LCG704 was in fact Cleared and Registered to officer Figueroa knowing that the illegal weapon was not registered to officer Figueroa. He and officer Decook # 5320

4

another forensic investigator Not only signed off. signed off on the inventory sheet but he Also forged, And fabricated the Crime scene Report the Major incident Report. There is Evidence that investigator Niewdach Claimed he Never handled the illegal weapon, later he states he handled the weapon swabbed it in front of ocic Alexander for prints. Other officers and parties that pertook in this Conspiracy to Fabricate Evidence to show that the illegal weapon that was used to shoot plaintiff six times was officer Figueroas weapon Are as follows. Sgt. Zaber Star #914 sawto it the he received the illegal weapon his office used to try to Murder the plaintiff. Despite the fact according to the Chicago Police Directives And policies he has No Athority to deholster A fired weapon, A foriensic officer is the only officer that has the Athority to deholster A fired police weapon, to prevent a Misscarriage of Justice. Yet Sergent Zaber went out the Scope of his duty And deholstered the illegal firearm that was used to Unlawfully Murder the plaintiff. When questioned by the I.P.R.A. he lies And says he got the information pertaining to the illegal weapon of the Computer from the district. Yet when I.P.R.A investigated the person that shot the gun Smokin gun "Figueroa, She Clearly States the Serial Number to the weapon that was fired she states she gave him the Serial Number face to face in the district to Sgt zaber. Proving Sgt zaber didn't got the false Serial Number of the weapon Fired off the Computer the information he gave was officer Figueroa Serial Number to her Duty weapon, but Sgt zaber

Revised 9/2007

30 of 75
statement of claim

Was suppose to get that information from the Actual Weapon fired which had Serial number LCG 704. Not PY4302, which Was Figueroaos duty Weapon which he obviously knew. He forged and fabricated the tactical Report, Crime Scene Report, Inventory Report, Major incident Report as did officer Figueroa, Lt. Cathleen Rendon star #202, Detective William Fielder star #20532, Cheif of organized Crime Nicholas Roti, Marvin Shear cheif of administration Andrea Stoutenborough the Coordinator of I.P.R.A. Kristi Lyon is the investigator that investigated the illegal shooting for I.P.R.A. Alexis Ameyngan star #222 Tomas Byrne Cheif of detectives Division Assitant States Attorney Lynn McCarthy said there was No Evidence of wrong doing by the Chicago Police. Anita Alvarez Ms. Ruth Gudino and Shawn McCarthy the last four defendants Are from the States Attorneys office, two have the same last name coincidently. Every one ive Named as a defendant, eithier did an actual act in this Conspiracy Net or knew about it and okayed it by participating in a code of silence, to Allow the Conspiracy to take place. Lenora Dumng is the friend of office Figueroaos that owned the firearm that was used to Murder plaintiff. She is also Named as a defendant. I Now can not participate in being an operating engineer that because of the physical and mental injuries I've sustained because of this Conspiracy. I was in a Coamator 2½ months, I had an 8% chance to live which made this Conspiracy easy to do if I had died. I Now have Seinsures, shot in right arm twice shot in chest multiple times, stomach once, I still have bullet in stomach and chest. On Sept-30-2011 officer Figueroa Actually

Pg 4 of 8
statement of claim

made an Attempt to secure the stolen Weapon, illegal Weapon, knowing it was different in Color, And size of her Registered duty Weapon. Figueroa Registered duty Weapon Serial Number is PYY 302 "Blue" in Color 4.2 in Barrel the illegal Weapon She used to try to Murder Plaintiff And gave false Information About And obstructed Justice. Serial Number is LCG 704 Black in Color with a 4 in Barrel, there's No Way A trained officer Would've misstaken these two Weapons for Each other. The size of the barrels kould've caused the two firearms to rest in the holster differently, the Colors Could Not have gotten Confused. Figueroa Also used police bullets in A non police Weapon Which is Another felony. Not to Mention the fact that All the defendants knew she Committed state and Federal Crimes but failed to Report them. The officers, states Attorney And Judge flood All Acted under the Color of State law When Each And every Crime was Committed. Officer Waters, Milton star # 5373 blew the Whistle on Figueroa When she tried to Secure the illegal Weapon on Sept-30-2011. If he Would've turned A blind Eye on this Conspiracy Figueroa Would've gotten Away with breaking State and Federal Crimes, her Foid Card didn't Match the Serial Number to the fire arm that was inventoried. The Appeate defenders office has told me if I Appeal the Criminal Case I Can get from 20 to 85 years, So that discourages me from Appealing the Case. The Heck Clause prohibits plaintiffs for filing Suit even if they do have A case if they were found guilty of certain crimes. But because the Chicago Police have Shown a pattern of

Pg 5 of 5
Statement of claim

Racketeering this suit qualifies under Rico U.S.C 18 "Rico" 1961-1968 (1994 ed. And Supp III), United States V. Turkette, 452 us 576, 101 S.ct 2524, 69 L.Ed 2d. 246 (1981) Lastly Evens V. city of Chicago. 2001 WL 1028401 (N.D. Ill, 2001) My Attorney Never Notified me about the fact that I was shot ~~six~~ ~~times~~ with An illegal Weapon, Nor did he bring these facts up during trial, Which is Not trial Strategy, it makes No legal Sense, And Causes me to beleive he also participated in this Conspiracy Also while taking my funds, So I Name him As a defendant Also, Along with Judge Lawrence flood, he Ruled on the Criminal Case, Yet hes An EX detective of the Chicago Police Dept And Wouldn't Allow Anything pertaining to the Shooting be Apart of trial. He Controled the outcome Sadly, I beleive he Knew that I was shot with An illegal Weapon So I Name him Also as a defendant. I did Not find out I got shot With An illegal weapon until July-29th 2014 When I received the discovery Sent from the city of chicago law Dept. Krishtin Accuff through fedX Tracking No# 805770169965. At that time I received the discovery from the civil case I had Against the Chicago Police Dept that I did withdrew from without predjudice because the Heck clause prevented me from moving past the Summary Judgement. Please feel free to Contact local 150 operating Engineers, they Will let the Courts Know I've been A Journeymen Since (2000) And am Still A dues paying member In good Standings

Local 150              Ph#-708482800    ☎. My SS.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
6200 S. Jolict RD.      Even After Figueroas Shot ME
Countryside, Illinoise   With illegal Weapon She got An Award for Valor!

Sergent Zabe was also dishonest about officer Figueroa going to the hospital along with PFI Niwdach staw# 17629 officer Figueroa has testified She wasn't hurt Nor Went to the hospital as the Battery Report indicates that Sgt Zabe filed. The only Reason she lied about her going to the hospital so that it would seem like An Emergency Situation So that it could possibly give Reason for the Sergent, Sergent Zabe to deholster his officer to get the illegal weapon, this is What Connected, ~~_____~~ connected Lt Rendon #722 to the Conspiracy, She gave An order to deholster the Weapon And Knew it wasn't Figueroa's Weapon because She was on scene. Sergent Zaber says in an I.P.Ra. Investigation Someone told him to deholster the illegal weapon he doesn't remember Who, But he does Know it went out the Scope of his duty And knows he lies About Figueroa going to the hospital.

**V.** **Relief:**

State briefly exactly what you want the court to do for you. Make no legal arguments. Cite no cases or statutes.

Award "Rico" damages I Would like to hold the defendants finascially Responsible for both compensatory damages that Are to be trebled And Punitive damages And Also Attorney fees/because defendants has caused plaintiff Economic loss to his bussiness or property including loss of Wages And professional Opportunitys. In the Amount the court And Jury deems Just And fair yet. Award damages Under "Rico" usc. 1761-1963 (1994 And 540 III)

**VI.** The plaintiff demands that the case be tried by a jury. ☑ YES ☐ NO

## CERTIFICATION

By signing this Complaint, I certify that the facts stated in this Complaint are true to the best of my knowledge, information and belief. I understand that if this certification is not correct, I may be subject to sanctions by the Court.

Signed this 21st day of MAY, 2015

*Aaron Miller*

**(Signature of plaintiff or plaintiffs)**

AARon Miller

**(Print name)**

M43843

**(I.D. Number)**

P.O. Box 999

Pinckneyville, IC.

62274

**(Address)**

Revised 9/2007

INDEPENDENT POLICE REVIEW AUTHORITY                    05 October 2011

TO:        Nicholas Roti
           Chief
           Organized Crime Division    *fax 5-6867*

FROM:      Investigator Kristi M. Lyons #123

SUBJECT:   REQUEST FOR CAGE TEAM TRACE OF RECOVERED WEAPON(S).

           The Reporting Investigator is requesting a copy of the results of the trace conducted
by the CAGE team for firearms below that were recovered in the captioned Officer Involved
Shooting investigations. Please have the results sent to me by FAX at (312)745-3591 (if possible) or
via Inter-Department mail at Unit 113/IPRA. Thank you for your attention in this matter.

1)   <u>RD #HT331501; Log #1045896 U#11-28– CPD Inventory #12333238</u>
     Glock, Model 19, 9MM, Semi-Automatic Pistol, 4 inch barrel, Black/Black Polymer
     Serial Number LCG704

2)   <u>RD #HT331501; Log #1045896 U#11-28–</u>
     Glock, Model 19, 9MM, Semi-Automatic Pistol, 4.2 inch barrel, Blue
     Serial Number PYY302

                                        *Inv. Kristi M. Lyons #123*

APPROVED:

*#022*
Supervisor/IPRA

LOG# 1045896 U#11-28
Attachment# 101

Summary

**Chicago Police Department**
**CLEAR**

Home ▸ Firearm Registration
Name: FIGUEROA , JENELYN
▸ 1. Applicant Information ▸ 2.Firearms ▸ 3.Review

| Steps: | 3.Review | | ◄ | ✔ Print Address | Home |
| | | | ◉ | | Print |
| | | | | | Logout |
| | | | | | Help |

**Applicant Information**

| Print Card No. | | CFP Status | | | |
| CFP No. | | | | | |
| Last Name FIGUEROA | | First Name JENELYN | | MI | Suffix |
| Birthdate ▓▓▓▓ | | Driver License No ▓▓▓▓ | | State IL | SSN ▓▓ |
| Race WHITE HISPANIC | | Sex FEMALE | | Vacate Code | Vacate Date |

US Citizen? Yes

Organization No Non CPD Sworn No CPD Sworn Yes Convicted of Felony No

Residence ▓▓▓▓▓▓▓▓ Phone Number ▓▓▓ ▓▓▓ Select Printer

Business  100  South RACINE AVE   CHICAGO IL 60607 3127468396   1213   Label 1 ▾

**Registered Firearms**

Select
Printer

| Print Registration No | Serial No | Firearm Make | Firearm Model | Firearm Type | Caliber | Barrel Length | Firearm Status |
|---|---|---|---|---|---|---|---|
| 🖨 📎 625608 | CDR0834 | SMITH & WESSON | 642 | REVOLVER | 38 | 2.0 | OUT OF SYSTEM-THIS REGISTRATION IS INACTIVE |
| 🖨 📎 R019673S | PYY302 | GLOCK GMBH | 19 | PISTOL | 9 | 4.0 | REGISTERED |

**Attachments**
no data found

Page 1 of 2

1-2

http://clnis.chicagopolice.org/pls/clear/f?p=13420:1000:181122308568370::NO:::&success_msg=Print%20Address%2F81F28547E...        10/4/2011

Exhibit B

Miller 13 C 3225

FCRL 001056

**DEPARTMENT OF JUSTICE**
**BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES**
**NATIONAL TRACING CENTER**
Phone:(800) 788-7133    Fax:(800) 578-7223
Print Date: October 05, 2011

**FIREARMS TRACE SUMMARY**

Trace Number: T20110263531    Request Date: September 30, 2011    Completion Date: September 30, 2011

JACINTA O'DRISCOLL
CHICAGO POLICE DEPARTMENT
3340 W FILLIMORE ST, 2ND FLOOR
CHICAGO, IL 60624
PHONE: (312) 746-7628 Ext:
FAX (312) 745-0709

Badge No:       6247
Investigation No: HT331501

**FIREARM INFORMATION**
Manufacturer: GLOCK GMBH
Model: 19
Caliber: 9
Serial Number: LCG704
Type: PISTOL
Country: AUSTRIA
Importer: GLOCK INC, SMYRNA GA
Obliterated:
Identifying Marks:
NOBN:
Gang Name:

**RECOVERY INFORMATION**
Recovery Date: 09/30/2011
Time to Crime: 1550 days

3340 W FILLIMORE ST
CHICAGO, IL 60624
Possessor:
DOB:
POB:

**PURCHASER INFORMATION**    Purchase Date: 07/03/2007
LEANORA ANGELA DUMAG
10018 DEVON AV
ROSEMONT, IL 60018
DOB: 12/05/1975
POB: CHICAGO, IL UNITED STATES
Race: WHITE
Sex: Female                    Height: 5 ft 1 in
ID 1: IL FIREARMS' OWNERS ID: 15010612    Weight: 130 lbs
ID 2: SOCIAL SECURITY#
Contact the local ATF office for additional information.

**DEALER INFORMATION**
SHORE GALLERIES INC                    FFL: 33601521
3318 W DEVON AVE
LINCOLNWOOD, IL 60712-1391
Phone:    (847) 676-2900    Ship-To-Date:    06/13/2007
Ext:

**ADMINISTRATIVE INFORMATION**
DISTRICT:
BEAT OR RECOVERY:
INVENTORY #:
POSSIBLE SERIAL #:
INVESTIGATING OFC:
IUCR:
AGE OF POSSESSOR:

**SUMMARY OF RESULTS**

The information in this report must be validated prior to use in any criminal proceedings.    LOG # 104389g U#11-2B

Trace: T20110263531    Attachment #102
FOR OFFICIAL USE ONLY

Uncontrolled Document if Printed / Uncertified Information (watermark)

Miller 13 C 3225          Exhibit #KC          FCRL 001061

SEP-30-2011 12:47   From:13127467247

Page:1/7

**BUREAU OF ADMINISTRATION**
Evidence and Recovered Property Section

**30 SEPTEMBER 2011**

TO:          Marvin Shear
             Deputy Chief
             Bureau of Administration

FROM:        Sgt. David Blyskal
             Evidence and Recovered Property Section

SUBJECT:     **Complaint Log Initiation Report**
             **CR # 1048947**

Complainant:          P.O. FIGUEROA, Jenelyn #15428 Empl.░░░░░░░nit (012) DOA 13 SEP 99
Accused:              Unknown
Witness:              WATERS, Milton #5373 Emp░░░░░░░Unit (167) DOA 18 JAN 94
Date & Time of Incident:   30 September 2011 1030 Hrs.
Reference Numbers:    RD# HT331501 Inventory # 12333238
Attachments:         1 Copy of Inventory, 1 copy firearms worksheet, 1 copy firearm
                     registration, 1 copy Theft case

          On today's date at approximately 1030 Hrs. the complainant, Officer Jenelyn
Figueroa arrived at the Evidence and Recovered Property Section to retrieve her duty weapon which
was inventoried on 05 June 2011 subsequent to an aggravated battery investigation. Officer
Figueroa's weapon, which was inventoried under inventory # 12333238, was retrieved from the
ERPS "B" Vault with the original sealed bag intact. The package was opened by Officer Milton
Waters of ERPS in the presence of Officer Figueroa. Officer Figueroa at this time informed Officer
Waters that the weapon inventoried was not her weapon. The weapon inventoried under inventory #
12333238 as Officer Figueroa's on 05 June 11 is a Glock Model 19 9mm semi-auto pistol with serial
# LCG704. Officer Figueroa states that her weapon was a Glock Model 19 semi-auto pistol with a
serial #PYY302. The undersigned then completed an unsuccessful computer query via etrack in an
attempt to locate Officer Figueroa's weapon. The undersigned also determined that the weapon on
hand (serial #LCG704) was unregistered. It was also verified at this time that Officer Figueroa does
have a Glock model 19 serial PYY302 registered to her. A GOCR was completed for Theft Over
under RD# HT521216 Event # 1127307704. IPRA was notified at 1301 Hrs. and Complaint Log
1048947 was obtained by Investigator Wolfe #44661. Deputy Chief Shear notified via email at 1330
Hrs.

                                        Sergeant David Blyskal
                                        Evidence and Recovered Property Section

Miller 13 C 3225          "Exhibit D"          FCRL 001239

SEP-30-2011 12:48    From:13127467247                                    Page:7/7

Bureau Of Administrative Services                           30-Sep-11

To:    Lt Victor Mitkal
       Commander
       Evidence and Recovered Property Section

From: P. O. Milton M Waters IV #5373

Subject: Officers Weapon

        This to From subject is to report R/O's knowledge of inventory #12333328. On
above date and time R/O received a form 54 requesting the return of Inventory#
12333238 to Officer Figuero. Upon receipt of said inventory R/O opened the sealed
container inspected the weapon and matched the contents to the serial number written
next to the items description.

        R/O requested P/O Figuero's FOI card and registration for verification and at that
time it was discovered that the inventoried weapon had a different serial number than the
one on P/O Figueroa's gun registration.

        At this time R/O presented the firearm to P/O Figuero for her inspection and
verification, at that time P/O Figuero informed R/O that the weapon was not her weapon.
P/O Figuero informed R/O that the firearm was not the model of her weapon and the
serial number did not match the serial number of her weapon.

        R/O requested a supervisor at that time.


                                                    Milton M Waters IV #5373


Approved:

_____

_____


Miller 13 C 3225              "Exhibit E"              FCRL 001245

  
SEP-30-2011 12:48    From:13127467247                                      Page:6/7

## Chicago Police Department - Incident Report

RD #: HT521216

| Firearm #1 | | | | Possessor/User: Figueroa Jenelyn | |
|---|---|---|---|---|---|

**Type:** Pistol

**Make:** Glock, Inc.--Au--

**Model:** 19

**Serial #:** PYY302

**Feature:** Black

**Caliber/Gauge:** 9 caliber

**Barrel Length:** 4

**Displayed?** No     **Used?** No     **Registered?** Yes     **Recovered?** No

**Taken/Stolen?** Yes

**Duty Related?** No     **Evidence?**

**Owner Known?** Yes     **Owner:** Jenelyn Figueroa

**Magazine Capacity:** 15

**Registered Status:** Clear

**# Live Rounds:** 9

---

ON TODAY'S DATE AT APPROXIMATELY 1030 HRS. THE COMPLAINANT, OFFICER JENELYN FIGUEROA ARRIVED AT THE EVIDENCE AND RECOVERED PROPERTY SECTION TO RETRIEVE HER DUTY WEAPON WHICH WAS INVENTORIED ON 05 JUNE 2011 SUBSEQUENT TO AN AGGRAVATED BATTERY INVESTIGATION REPORTED UNDER RD# HT331501. OFFICER FIGUEROA'S WEAPON, WHICH WAS INVENTORIED UNDER INVENTORY # 12333238, WAS RETRIEVED FROM THE ERPS "B" VAULT WITH THE ORIGINAL SEALED BAG INTACT. THE PACKAGE WAS OPENED BY OFFICER MILTON WATERS OF ERPS IN THE PRESENCE OF OFFICER FIGUEROA. OFFICER FIGUEROA AT THIS TIME INFORMED OFFICER WATERS THAT THE WEAPON INVENTORIED WAS NOT HER WEAPON. THE WEAPON INVENTORIED UNDER INVENTORY # 12333238 AS OFFICER FIGUEROA'S ON 05 JUNE 11 IS A GLOCK MODEL 19 9MM SEMI-AUTO PISTOL WITH SERIAL # LCG704. OFFICER FIGUEROA STATES THAT HER WEAPON WAS A GLOCK MODEL 19 SEMI-AUTO PISTOL WITH A SERIAL #PYY302. THE UNDERSIGNED THEN COMPLETED AN UNSUCCESSFUL COMPUTER QUERY VIA ETRACK IN AN ATTEMPT TO LOCATE OFFICER FIGUEROA'S WEAPON. THE UNDERSIGNED ALSO DETERMINED THAT THE WEAPON ON HAND (SERIAL #LCG704) WAS UNREGISTERED. IT WAS ALSO VERIFIED AT THIS TIME THAT OFFICER FIGUEROA DOES HAVE A GLOCK MODEL 19 SERIAL PYY302 REGISTERED TO HER.

---

| | Star No | Emp No | Name | User | Date | Unit | Beat |
|---|---|---|---|---|---|---|---|
| Reporting Officer | 9967 | ▮▮▮ | ZARAGOZA, Martha, G | ▮▮▮ | 30 Sep 2011 12:43 | 167 | 5874 |

---

| Victim | IUCR | Crime | | Offender |
|---|---|---|---|---|
| FIGUEROA | 0810 | Theft - Over $500 | | UNK |

---

Print Generated By:  CASELLO, Philip ▮▮▮        Page 2   of 2                    30-SEP-2011 12:50

Miller 13 C 3225                        FCRL 001244

SEP-30-2011 12:47   From:13127467247                                    Page:3/7

## FIREARMS RECEIPT & WORKSHEET
CRIME LABORATORY DIVISION/CHICAGO POLICE

| CASE NAME | | | BEAT | I-UCR CODE | INCIDENT TYPE | INCIDENT NO. |
|---|---|---|---|---|---|---|
| PO J. FIGUEROA # 15428 | | | 1211 | 0453 | RD | HT331501 |

| INVENTORY NO. | UNIT | UNIT DESCRIPTION | DATE OF RECOVERY | DATE INVENTORY APPROVED |
|---|---|---|---|---|
| 12333238 | 177 | FORENSIC SERVICES SECTION | 05-JUN-11 | 05-JUN-11 |

| TYPE | SUBTYPE |
|---|---|
| PISTOL | SEMI-AUTOMATIC |

| MAKE | MODEL |
|---|---|
| GLOCK, INC.--AU-- | 19 |

| MODEL NO. | IMPORTER |
|---|---|
| | |

| SERIAL NO. | OBLITERATED? | LOCATION |
|---|---|---|
| LCG704 | NO | FRAME |

| OTHER NO. | OBLITERATED? | LOCATION |
|---|---|---|
| | NO | |

| CALIBER / CLASS | CAPACITY | BARREL LENGTH | FINISH |
|---|---|---|---|
| 9MM / ?? | 15 + 1 | 4" | BLACK |

RECOVERY DESCRIPTION
GLOCK, MODEL 19, 9MM, SEMI-AUTO PISTOL, 4 IN. BARREL, BLACK/BLACK POLYMER.

| RECEIVED FROM | STAR NO. | UNIT NO. | UNIT DESCRIPTION |
|---|---|---|---|
| NIEWDACH, ZBIGNIEW | 17629 | 177 | FORENSIC SERVICES SECTION |

| RECEIVED METHOD | RECEIVED FROM LOCATION |
|---|---|
| Dept.Mail | Other |

OTHER EVIDENCE
one magazine

nine 9mm CAL CARTRIDGES




HAMMER

CONDITION OF BORE




| SAFETY DEVICES | | FUNCTION? | NO. TESTS | SENT TO STATE POLICE? |
|---|---|---|---|---|
| | | | 0 | NO |
| OPERATING CONDITION | | | | |



REMARKS
*POLICE INVOLVED SHOOTING*
PO'S WEAPON
R/O DID NOT HANDLE NOR EXAMINE THE PISTOL.
THE INFORMATION WAS OBTAINED FROM THE INVENTORY SHEET.

Incident Number

R
D

H
T
3
3
1
5
0
1

| EXHIBITS TURNED OVER TO OTHER | | STAR NO. | DATE |
|---|---|---|---|
| DATA PREPARED BY ALONSO, ARMANDO | | STAR NO. 6571 | DATE 16-JUN-11 |

Miller 13 C 3225                    ExHibit G                    FCRL 001241

G

Crime Scene Report 162683    Printed by PC0Q395 on 06-JUN-2011 01:39    Page 5 of 5

C11-253864
acef

**CLOSE UP          DIGITAL          FRAME TO 2003 FORD ESCAPE.**

**Involved Vehicles**

| Color | Description | License No. | State | Make | Model | Vin No. | Year |
|-------|-------------|-------------|-------|------|-------|---------|------|
| YELLOW | | L284556 | IL | FORD | ESCAPE XLS | 1FMYU02123KA09090 | 2003 |

Comment   VEHICLE HAS DRIVER SIDE DAMAGE, TO BE TOWED FOR INVESTIGATION.

**Narrative**

R/PFI WAS ASSIGNED TO A POLICE INVOLVED SHOOTING AT 2050 W. MONROE ST. UPON ARRIVAL, R/PFI LEARNED FROM BT. 5414 DET. FIEDLER #20532 & ANDRAS #21277 THAT BT. 1206J, P.O.'S FOSTER #10790 & FIGUEROA #15428 RESPONDED TO A HOME INVASION AT 2050 W. MONROE ST. OFFENDER GOT INTO A YELLOW FORD ESCAPE  IL LIC# L284556 AND WAS SHOT AFTER HE USED HIS VEHICLE TO INJURE P.O. FOSTER # 10790. PRIOR TO R/PFI ARRIVAL, CFD TRANSPORTED OFFENDER TO "STROGER" HOSPITAL,  AND P.O.'S FOSTER  & FIGUEROA WHERE TAKEN TO "RUSH -PRES-ST. LUKES" HOSPITAL.

THE SCENE WAS VIDEO-TAPED, PHOTOGRAPHED, AND SEARCHED FOR PHYSICAL EVIDENCE WITH RESULTS  LISTED IN INVENTORY SECTION OF THIS REPORT.

R/PFI RECEIVED P.O.FOSTER'S HANDGUN AND P.O.FIGUEROA'S HANDGUN FROM SGT. ZABER #914 AT SCENE. THE HANDGUNS WERE UNLOADED IN PRESENCE OF OCIC ALEXANDER CAR 45.  R/PFI SWABBED P/O'S WEAPONS FOR DNA.

OFFENDER'S VEHICLE WAS DNA SWABBED AND DUSTED FOR RIDGE IMPRESSIONS WITH RESULTS  LISTED ABOVE. PER REQUEST OF ASSIGNED DET'S, THE KITCHEN WINDOW AND REAR BASEMENT DOOR OF RESIDENCE AT 2050 W. MONROE ST. WERE DUSTED FOR RIDGE IMPRESSIONS WITH NEGATIVE RESULTS. R/PFI WAS ASSISTED IN SCENE PROCESSING AND PHOTOGRAPHS BY BT. 5846, E.T. MARCONI #16570.

THE SCENE  WAS DIAGRAMMED AND SCANNED VIA LEICA BY BT.5808,  PFI'S KEELER #3729 & JASTER #20674.

R/PFI RELOCATED TO "STROGER" HOSPITAL WHERE OFFENDER'S CLOTHING WAS RECEIVED FROM DET. FORD #20615. R/PFI FURTHER LEARNED THAT OFFENDER WAS IN CRITICAL CONDITION WITH GUN SHOT WOUNDS TO RIGHT ARM AND RIGHT CHEST.

Submitted by **NIEWDACH ZBIGNIEW M** Star No **17629** on **06-JUN-2011** 01:36

Approved by **FOGARTY LINDA M** Star No **1060** on **06-JUN-2011** 01:39

PAGE 22

Miller 13 C 3225          2H    Exhibit"H"          FCRL 000238





Miller 13 C 3225

FCRL 000239

# TACTICAL RESPONSE REPORT/Chicago Police Department

**INVOLVED**

| 1 DATE OF INCIDENT | TIME | 2 ADDRESS OF OCCURRENCE | | | | 3 LOCATION CODE | 4 BEAT/OCCUR |
|---|---|---|---|---|---|---|---|
| 05-JUN-2011 | 06:55:00 | 2050 W MONROE ST  CHICAGO, IL 60612 | | | | D92 | 1211 |

| 5 POSITION | 6 LAST NAME | 7 FIRST NAME | 8 STAR NO | 9 SEX | 10 RACE CODE | 11 AGE | 12 HT | 13 WT |
|---|---|---|---|---|---|---|---|---|
| 9161 | FIGUEROA | JENELYN | 15428 | 01 M ☒ 02 F  S | | | 505 | 129 |

| 14 DATE OF APPT | 15 EMPLOYEE NO | 16 UNIT & BEAT OF ASSIGNMENT | 17 DUTY STATUS | 18 MEMBER INJURED? | 19 MEMBER IN UNIFORM? |
|---|---|---|---|---|---|
| 13-SEP-1999 | 39215 | 012  1206J | ☒01 On   02 Off  ☒01 Yes   02 No | | ☒01 Yes   02 No |

**INFORMATION**

| 20 LAST NAME | 21 FIRST NAME | 22 M I | 23 SEX | 24 RACE | 25 D O B | 26 HT | 27 WT |
|---|---|---|---|---|---|---|---|
| MILLER | AARON | | ☒01 M   02 F  BLK | 17-DEC-1976 | 504 | 200 |

| 28 ADDRESS 11815 SANGAMON ST  CHICAGO, IL | 29 TELEPHONE NO | 30 WAS SUBJECT ARMED/VERBAL THREAT (ASSAULT) OTHER (SPECIFY) | 31 SUBJECT INJURY (?) | 32 SUBJECT ALLEGED INJURY? |
|---|---|---|---|---|
| | | ☒01 Yes   02 No | ☒01 Yes   02 No | ☒01 Yes   02 No |

| 33 WHERE WAS MEDICAL TREATMENT OBTAINED? | 34 BY WHOM? | 35 CONDITION | |
|---|---|---|---|
| COOK COUNTY HOSPITAL - STROGER HOS | DR. DREW | ☒01 Hospitalized  04 Not Hospitalized | 01 Apparently Normal / 02 Under Influence / 05 Refused Medical Aid |

| 36 CHARGES PLACED | | DNA | 37 CB NO | R NO |
|---|---|---|---|---|
| | | | 00000000 | |

**SUBJECT'S ACTIONS** (Check all that apply)

| PASSIVE RESISTER | | ACTIVE RESISTER | | ASSAILANT ASSAULT | | ASSAILANT/BATTERY | | ASSAILANT DEADLY FORCE | |
|---|---|---|---|---|---|---|---|---|---|
| DID NOT FOLLOW VERBAL DIRECTION | ☒ | FLED | ☒ | IMMINENT THREAT OF BATTERY | ☒ | ATTACK WITH WEAPON | ☒ | USES FORCE LIKELY TO CAUSE DEATH OR GREAT BODILY HARM | ☒ |
| STIFFENED (DEAD WEIGHT) | | PULLED AWAY | | OTHER _____ | | ATTACK WITHOUT WEAPON | | WEAPON | ☒ |
| OTHER _____ | | OTHER _____ | | | | OTHER VEHICLE | | OTHER VEHICLE | |

**MEMBER'S RESPONSE**

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| MEMBER PRESENCE | ☒ | OPEN HAND STRIKE | | ELBOW STRIKE | | KNEE STRIKE | | FIREARM | ☒ |
| VERBAL COMMANDS | ☒ | TAKE DOWN / EMERGENCY HANDCUFFING | ☒ | CLOSED HAND STRIKE/PUNCH | | X-CAS | | OTHER _____ | |
| ESCORT HOLDS | | OC CHEMICAL WEAPON | | IMPACT WEAPON (Describe in box 40) | | IMPACT MUNITION (Describe in Box 40) | | | |
| WRIST LOCK | | CANINE | | | | | | | |
| ARMBAR | | | | | | | | | |
| PRESSURE SENSITIVE AREAS | | TASER (Probe Discharge) | | | | | | | |
| CONTROL INSTRUMENT | | TASER (Contact Stun) | | | | | | | |
| OC/CHEMICAL WEAPON W/AUTHORIZATION | | TASER (Laser Targeted) | | | | | | | |
| OTHER _____ | | TASER (Spark Displayed) | | | | | | | |
| | | OTHER _____ | | OTHER _____ | | | | | |

| OC/CHEMICAL WEAPON AUTHORIZED BY (NAME) | | | | |
|---|---|---|---|---|

| POSITION | STAR NO | UNIT | **40 ADDITIONAL INFORMATION** |
|---|---|---|---|
| | | | ABOVE OFFICER WAS ATTEMPTING TO PLACE OFFENDER IN CUSTODY, AT WHICH TIME, OFFENDER USED HIS VEHICLE AS A WEAPON IN AN ATTEMPT TO DEFEAT THE ARREST. THE NUMBER OF SHOTS FIRED BY THE OFFICER IS APPROXIMATE, PENDING FURTHER INVESTIGATION. |

**WEAPON DISCHARGE INCIDENT**

| 41 WEAPON TYPE | | 42 INCIDENT OCCURRED | 43 LIGHTING CONDITIONS | 44 WEATHER CONDITIONS |
|---|---|---|---|---|
| 01 REVOLVER | ☒ 04 SEMI AUTO PISTOL | Indoors  ☒ Outdoors | ☒ 01 Daylight  04 Dusk | CLEAR |
| 02 RIFLE | 05 CHEMICAL WEAPON | 02 Night  05 Prior Artificial | 03 Dawn  ☒ A Good Artificial | |
| 03 SHOTGUN | 06 TASER (Probe Discharge) | 45 MAKE/MANUFACTURER | 46 MODEL | 47 BARREL LENGTH | 48 CALIBER/GAUGE |
| | 07 OTHER | GLOCK, INC - AU- | 19 | 4.0 | 9 MM |

| 49 TASER DART NO | 50 WEAPON SERIAL NO (Include Letters) | 51 CHICAGO GUN REG NO | 52 IS FIREARM OWNER ID NO | 53 HANDGUN CERTIFICATE NO |
|---|---|---|---|---|
| | PYY302 | R019673S | 54610107 | |

| 54 SPECIAL WEAPON CERTIFICATE NO | 55 PROPERTY INVENTORY NO | 56 TYPE OF AMMUNITION USED | 57 NO OF WEAPONS DISCHARGED BY THIS MEMBER | 58 TOTAL NO OF SHOTS MEMBER FIRED |
|---|---|---|---|---|
| | | Department Issued | 1 | 3 |

| 59 WHO FIRED FIRST SHOT | 60 WAS FIREARM RELOADED DURING INCIDENT | 61 NO OF CARTRIDGES/SHOT SHELLS RELOADED | 62 HOW WAS MEMBER'S HANDGUN WORN | |
|---|---|---|---|---|
| ☒ 01 MEMBER  02 OFFENDER  03 OTHER (SPECIFY) | 01 YES  ☒ 02 NO | 0 | ☒ 01 RT SIDE (WAIST)  02 LT SIDE (WAIST)  03 OTHER (Specify) | |

| 63 HOW WAS MEMBER'S HANDGUN DRAWN | | 64 SERVICE METHOD/EQUIPMENT USED TO RELOAD DNA | 65 DID MEMBER USE SIGHTS |
|---|---|---|---|
| ☒ 01 STRONG SIDE DRAW  02 CROSS DRAW  03 OTHER (Specify) | | | 01 YES  ☒ 02 NO |

| 66 DESCRIBE PROTECTIVE COVER USED (LIGHT POLES, DOORWAYS, CAR, FURNITURE, ETC) | 67 DISTANCE BETWEEN INVOLVED MEMBER & OFFENDER WHEN FIRST SHOT WAS FIRED |
|---|---|
| DNA | ☒ 01 0 - 05 FT  02 05 - 10 FT  03 10 - 15 FT  04 OVER 15 FT |

| 68 PERSON/OBJECT STRUCK AS RESULT OF THE DISCHARGE OF MEMBER'S WEAPON | 69 POSITION OF MEMBER DISCHARGING WEAPON |
|---|---|
| ☒ 01 PERSON  02 OBJECT  03 BOTH  04 UNKNOWN | ☒ 01 SITTING  02 KNEELING  03 STANDING  02 LYING DOWN  05 OTHER (SPECIFY) |

**INFO.**

NOTIFICATIONS (OC OR TASER INCIDENT):  OEMC  ☒ DESK SGT & W.C./DIST. OF OCCUR

NOTIFICATIONS (F REARM INCIDENT):  ☒ OEMC  ☒ DESK SGT & W.C./DIST. OF OCCUR.  ☒ CP COMMAND  ☒ DET. DIV.

Members will ensure that all required notifications and all witnesses to this use of force are documented in the appropriate case report.

**SIGNATURES**

| 73 REPORTING MEMBER (Print Name) | STAR/EMPLOYEE NO | SIGNATURE |
|---|---|---|
| ZABER, NICHOLAS E | 914 | PC0K916 |
| 05-JUN-2011 15:14:36 | 44090 | |

Reviewing supervisor will ensure the legibility and completeness of this report and attest by entering the required information below.

| 74 REVIEWING SUPERVISOR (Print Name) | STAR NO | SIGNATURE | DATE REVIEWED | TIME |
|---|---|---|---|---|
| RENDON, CATHLEEN M | 722 | PC01145 | 05-JUN-2011 15:27:04 | |

0-11 377 (REV 10/07)

*Exhibit "I"*

Miller 13 C 3225

FCRL 000590

| CHICAGO POLICE DEPARTMENT **Major Incident Notification Detail** CPD - 11. 805 (10/04) - C | CONFID ENTIAL | Area: 4 Reporting Unit: 640 Incident No: 55971 Deployment Level: UNK |

| Time Period | Crime/Incident RD Number Dist of Occurrence | Summary |
|---|---|---|
| 0900 - 1700 | 0453 - Battery - Aggravated Po: Other Dang Weap<br>**Area:** 4<br>**District:** 012<br>**Beat:** 1211<br>**RD No:** HT331501<br>**No of Victims:** 1<br>**No of Offenders:** 1<br><br><br><br><br>**Updated Date:**<br>05-JUN-2011 14:44<br>**Reason For Update:**<br>AREA UPDATE. | **Notification Date:** 05-JUN-2011 13:45<br>**Date and Time:** 05-JUN-2011 06:55<br>**Location:** 2050 W MONROE ST<br>CHICAGO IL 60612<br>304 - STREET<br><br>**Victim #1:** **Star #:** 10790 **Emp #:** 100226 **On Duty**<br>FOSTER, GRACE G<br>Female/White/31 Years<br>5'07", 125 lbs<br>**Date of Appointment:** 21-FEB-06<br>**Injury Description:** Treated For A Laceration To The Leg<br>**Condition:** Good<br>**Transported To:** RUSH-PRESBYTERIAN-ST LUKE'S MEDICAL CENTER - 1653 W CONGRESS PARKWAY<br>**Victim #2:** **Star #:** 15428 **Emp #:** 39215 **On Duty**<br>FIGUEROA, JENELYN<br>Female/S/38 Years<br>5'05", 129 lbs<br>**Date of Appointment:** 13-SEP-99<br><br>**Offender #1:** MILLER, AARON<br>Male/Black/34 Years<br>2848 W 141ST<br>BLUE ISLAND, IL<br>**IN CUSTODY** **IR No:** 1099343<br>**Gang Affiliation:** Unknown Affiliation<br>**Buy Bust Requested:** NO<br>**Use of Weapon:** USED<br>**Weapon Recovery:** RECOVERED<br>**Vehicle Info:** FORD ESCAPE, YELLOW, IL # L284556 |

Printed By: ROBINSON, JAMES (PC0F627)      Page 1 of 3      Printed On: 06-JUN-2011 09:13



Miller 13 C 3225      Exhibit 5 1      FCRL 000373

| CHICAGO POLICE DEPARTMENT **Major Incident Notification Detail** CPD - 11, 805 (10/04) - C | CONFID ENTIAL | Area: 4 Reporting Unit: 640 Incident No: 55971 Deployment Level: UNK |
|---|---|---|

| Time Period | Crime/Incident RD Number Dist of Occurrence | Summary |
|---|---|---|
| | | **Manner/Motive:**   OFFENDER USED VEHICLE AS A WEAPON / EVADE ARREST<br><br>**Involved Personnel:**<br>**Notification Made By**<br>SEDLACEK, Paul M<br>Emp #: 26050      Star #: 2140<br>Agency: Chicago Police Dept<br>**Detective Assigned**<br>ANDRAS, Gregory A<br>Emp #: 51247      Star #: 21277<br>Agency: Chicago Police Dept<br>**Detective Assigned**<br>FIEDLER, William G<br>Emp #: 42606      Star #: 20532<br>Agency: Chicago Police Dept |



Miller 13 C 3225                                            FCRL 000374

| CHICAGO POLICE DEPARTMENT **Major Incident Notification Detail** CPD - 11. 805 (10/04) - C | CONFID ENTIAL | Area: 4 Reporting Unit: 640 Incident No: 55971 Deployment Level: UNK |
|---|---|---|

| Time Period | Crime/Incident RD Number Dist of Occurrence | Summary |
|---|---|---|
| | | **Narrative:** Area Four Initial Notification: While attempting to affect an arrest for home invasion and domestic battery, the offender used his vehicle as a deadly weapon and pinned Officer Foster between a wall and the vehicle. The offender then attempted to crash the vehicle into a post with Officer Figueroa inside. In fear for their lives, both officers discharged their weapons .The offender sustained two GSW's to the chest and two GSW to the right arm. The offender was transported to Stroger hospital and is in critical condition. Offender Criminal History: Aaron MILLER IR# 1099343, 18 Total arrests. 5 felonies, 10 misdemeanors, 3 juvenile arrests. 4 convictions &#8211; 1 - DUI and 3 - Possession of Cannabis Weapon Information: Police Officer Foster - Smith and Wesson Model 3953, Ser # BDJ7694, 9mm, Reg # R000294S. Police Officer Figueroa - Glock Model 19, SER # PYY302, 9mm, Reg # R019673S |



Miller 13 C 3225

Exhibit 2I2

FCRL 000375

**OFFICER'S BATTERY REPORT**
CHICAGO POLICE DEPARTMENT

RD NO. HT331501

INSTRUCTIONS: This form is to be completed for all incidents when: (1) a sworn member is the victim of a murder, aggravated battery, battery, aggravated assault, or assault while performing a police function either on-duty or off-duty, (2) a detention aide is the victim of a murder, aggravated battery, battery, aggravated assault, or assault while in the performance of his or her duties.

"X APPLICABLE BOXES"

| OFFICER INFORMATION | INCIDENT INFORMATION |
|---|---|

**OFFICER INFORMATION**

NAME (LAST - FIRST - M.I.)
**FIGUEROA, JENELYN**

STAR NO.
**15428**

POSITION
**POLICE OFFICER**

DATE OF APPOINTMENT
**13-SEP-1999**

EMPLOYEE NO.

UNIT OF ASSIGNMENT
**012**

BEAT/CALL NO.
**1206J**

SEX: ☐ 1. M   ☒ 2. F
RACE **HISPANIC**
DOB

HEIGHT
**505**

WEIGHT
**128**

**INCIDENT INFORMATION**

☐ 1. INDOOR   ☒ 2. OUTDOOR

ADDRESS OF OCCURRENCE
**2050 W MONROE ST**

CITY ☒ CHICAGO   STATE (if outside Chicago)
☐

LOCATION CODE
**092-ALLEY**

BEAT OF OCCURRENCE
**1211**

DATE OF OCCURRENCE **05-JUN-2011**   TIME **06:55:00**   DAY OF WEEK **SUNDAY**

NO. OF OFFICERS BATTERED __2__

WERE THERE ASSISTING UNITS ON SCENE? ☒ 1. YES   2. ☐ NO
IF YES HOW MANY ASSISTING OFFICERS WERE PRESENT AT TIME BATTERY (EXCLUDING YOU OR YOUR PARTNERS) ? __2__

**TYPE OF ASSIGNMENT WHEN BATTERY OCCURRED**

☒ 1. ON DUTY
  ☒ A. UNIFORM, PATROL DUTY
  ☐ B. UNIFORM, OTHER DUTY
    Describe _____
  ☐ C. CITIZEN'S DRESS
  ☐ D. TACTICAL
  ☐ E. B.I.S. UNIT
  ☐ F. SPECIAL EMPLOYMENT
  ☐ G. OTHER _____

☐ 2. OFF DUTY
☐ 3. SPECIAL EMPLOYMENT
☐ 4. SECONDARY / OTHER

WORKING:
☐ A. ALONE
☒ B. WITH ONE PARTNER
☐ C. WITH MULTIPLE PARTNERS
  How many? _____

PATROL TYPE:
☒ A. SQUAD CAR
☐ B. FOOT
☐ C. BICYCLE
☐ D. APV/MOTORCYCLE
☐ E. SQUADROL
☐ F. OTHER

**MANNER OF ATTACK**

☐ 01. SHOT
☐ 02. SHOT AT
☐ 03. STABBED/CUT (INCLUDING ACTUAL ATTEMPT)
☐ 04. STRUCK/BLUNT FORCE (INCLUDING ACTUAL ATTEMPT)
☒ 05. OTHER (INCLUDING VERBAL THREATS)

**TYPE OF WEAPON/THREAT**

(Check all that apply):
☐ A. FIREARM CALIBER _____
  ☐ 1. REVOLVER
  ☐ 2. SEMI-AUTOMATIC
  ☐ 3. RIFLE
  ☐ 4. SHOTGUN

☐ B. VEHICLE
  ☐ 1. OFFICER STRUCK WITH VEHICLE
  ☐ 2. ATTEMPTED TO STRIKE WITH VEHICLE
☐ C. KNIFE/OTHER CUTTING INSTRUMENT

☐ D. HANDS/FISTS
☐ E. FEET
☐ F. MOUTH (SPIT, BITE, ETC.)
☒ G. VERBAL THREAT (ASSAULT)
☒ H. OTHER (SPECIFY)

/REFER TO UNUSUAL CIRCUMSTANCE NARRATIVE

☐ I. BLUNT INSTRUMENT

FIREARM USE INFORMATION   (Check all that apply):
☐ A. OFFICER AT GUNPOINT
☐ B. OFFICER'S OWN WEAPON OBTAINED
☐ C. ATTEMPTED TO OBTAIN OFFICER'S OWN WEAPON

**TYPE OF ACTIVITY**

☐ A. AMBUSH - NO WARNING
☐ B. TRAFFIC STOP/PURSUIT
☐ C. INVESTIGATING SUSPICIOUS PERSON
☒ D. DISTURBANCE - DOMESTIC
☐ E. DISTURBANCE - MENTAL PATIENT
☐ F. DISTURBANCE - RIOT/MOB ACTION/CIVIL, DISORDER
☒ G. DISTURBANCE - OTHER
☐ H. MAN WITH A GUN
☐ I. PURSUING/ARRESTING OFFENDER (Specify)
  CHARGE _____ IUCR CODE _____

☐ J. PROCESSING/TRANSPORTING/GUARDING A PRISONER (Specify)
  ORIGINAL CHARGE _____ ORIGINAL IUCR CODE _____

☐ K. OTHER

**OFFENDER INFORMATION**

SEX: ☒ 1. M   ☐ 2. F
RACE **BLACK**
DOB **17-DEC-1976**

CB NO.
**00000000**
IR NO.

**TYPE OF INJURY TO OFFICER**

☐ A. FATAL
☐ B. NON-FATAL - MAJOR INJURY (Broken Bones/Serious Lacerations/Internal Injuries)
☐ C. NON-FATAL - MINOR INJURY (Bruises/Swelling/Minor Abrasions)
☒ D. NONE APPARENT/NONE

WAS THE OFFENDER'S ACTIVITY:
DRUG RELATED?
☐ 1. YES
☒ 2. NO
☐ 3. UNKNOWN

GANG RELATED?
☐ 1. YES
☒ 2. NO
☐ 3. UNKNOWN

NO. OF OFFENDERS PRESENT? __1__

**LIGHTING CONDITIONS AT INCIDENT**

☒ A. DAYLIGHT
☐ B. NIGHT
☐ C. DAWN
☐ D. DUSK
☐ E. ARTIFICIAL LIGHT
  ☐ 1. POOR
  ☐ 2. GOOD

**WEATHER CONDITIONS**

☒ A. CLEAR
☐ B. RAIN
☐ C. SNOW
☐ D. ~~SMOKE~~
☐ E. SEVERE CROSS WIND

APPROXIMATE OUTDOOR TEMPERATURE: __70__ °F

CPD-11.451 (REV. 1/04)



LOG# ~~1058074~~ #11-28

Attachment # __8__

Miller 13 C 3225          EXHIBIT ~~20~~ J3          FCRL 000723

PROPERTY INVENTORY – NO.
CHICAGO POLICE DEPARTMENT
CPD 34.523 (REV. 10/09)

INV NO 12333238

PKG NO 2661048

RD HT331501

UNIT 177

INVENTORY NO. 12333238

RE-INVENTORY OF:

011-25304
54#13715
aef 2talu11

DATE RECOVERED: 05-JUN-2011

| ITEM NO | QUANTITY | DESCRIPTION OF PROPERTY |
|---|---|---|
| 494433 | 1 | FIREARM: GLOCK, MODEL 19, 9MM, SEMI-AUTO PISTOL, 4 IN. BARREL, BLACK/BLACK POLYMER  SN: LCG794 |
| 494332 | 1 | BULLET / AMMO / MA : BLACK 15-ROUND MAGAZINE FROM ABOVE HANDGUN |
| 494334 | 9 | BULLET / AMMO / MA : "WIN" 9MM LUPER (+P CARTRIDGES (1: IN CHAMBER, 8: IN MAGAZINE) |

**POLICE OFFICERS WEAPON**

COMMENTS: AGGRAVATED BATTERY VICTIMS: P.O. GRACE FOSTER #10790 / P.O. JENELYN FIGUEROA #15428  HANDGUN CHECKS CLEAR
REGISTERED TO?:O FIGUEROA #15428 PER PFF DECODX #5300 VIA COMPUTER CHECK

$ DEPOSITED AMT          $ INVENTORY AMT

MY SIGNATURE HEREON ACKNOWLEDGES RECEIVING ALL PROPERTY DESCRIBED IN THIS INVENTORY

RECIPIENT'S SIGNATURE
X

ADDRESS - STREET

CITY          STATE          ZIP

DATE RECEIVED

**EVIDENCE & RECOVERED PROPERTY SECTION USE ONLY**

OFFICER'S SIGNATURE –  STAR - UNIT
X

WATCH COMDR.'S APPROVAL SIGNATURE
(EXEMPT RANK REQUIRED FOR FIREARMS)
X

Court Date

Court Branch

COURT ORDER - DISPOSAL INSTRUCTIONS

EVIDENCE

UCR: 0453     STATE CHARGES: BATTERY AGGRAVATED PO: OTHER DANG WEAP

CHARGE TYPE:                INCH/CATE:

RECOVERED/SEIZED FROM - NAME: ZABER, NICHOLAS     AT: 24 S SEELEY AVE  CHICAGO, IL 60612     BEAT OF RECOVERY 1211

☐ DECEASED   ☐ ARRESTED     STAR NO 20532   UNIT 640

OWNER'S NAME: FIGUEROA, JENELYN     Star: 15428     ADDRESS     TELEPHONE NO.

FOUND BY - NAME: INVESTIGATING OFFICER -  FIEDLER, WILLIAM     STAR NO 20532     ADDRESS     TELEPHONE NO.

☐ CHECK IF CPD

☒ HELD FOR INVESTIGATION AND/OR EVIDENCE (IF NOT NEEDED FOR INVEST/GATION/EVIDENCE, LEAVE BLANK)

1st OFFICER'S NAME:  NEIWDACH, ZBIGNIEW     STAR NO 17629     UNIT 177

SIGNATURE:  Electronic Approval

☐ PROPERTY AVAILABLE FOR RETURN TO OWNER

2nd OFFICER'S NAME:  MARCONI, ANGELO     STAR NO 16570     UNIT 377

☐ TO BE DISPOSED OF BY CUSTODIAN/NOT TO BE RETURNED (THIS APPLIES IF PROPERTY IS NOT EVIDENCE, NOT RETURNABLE AND/OR OWNER IS UNKNOWN)

SIGNATURE:  Electronic Approval

INITIAL DESTINATION OF PROPERTY:
**FORENSIC SERVICES SECTION**

APPROVING DESK SERGEANT: BOLAND, ROY     STAR NO 11/88     DATE 05-JUN-2011     TIME 20:03

VIA  ☐ POV/CE MAIL   ☒ RECOVERING UNIT PERSONNEL     KEER WITH PPOPERTY

☐ E & R'S PICKUP   ☐ EVID LAB TECHNICIAN

E & R'S USE ONLY

OFFICER'S SIGNATURE –  STAR  UNIT
X

JUDGE          C1 BR

Customer  9-000965

*Exhibit K*

C'11-25384 6C#13 ACY

# FIREARMS RECEIPT & WORKSHEET
## CRIME LABORATORY DIVISION/CHICAGO POLICE

| CASE NAME | | | BEAT | I-UCR CODE | INCIDENT TYPE | INCIDENT NO. |
|---|---|---|---|---|---|---|
| PO J. FIGUEROA # 15428 | | | 1211 | 0453 | RD | HT331501 |

| INVENTORY NO. | UNIT | UNIT DESCRIPTION | DATE OF RECOVERY | DATE INVENTORY APPROVED |
|---|---|---|---|---|
| 12333238 | 177 | FORENSIC SERVICES SECTION | 05-JUN-11 | 05-JUN-11 |

| TYPE | SUBTYPE |
|---|---|
| PISTOL | SEMI-AUTOMATIC |

| MAKE | MODEL |
|---|---|
| GLOCK, INC.--AU-- | 19 |

| MODEL NO. | IMPORTER |
|---|---|
| | |

| SERIAL NO. | OBLITERATED? | LOCATION |
|---|---|---|
| LCG704 | NO | FRAME |

| OTHER NO. | OBLITERATED? | LOCATION |
|---|---|---|
| | NO | |

| CALIBER / CLASS | CAPACITY | BARREL LENGTH | FINISH |
|---|---|---|---|
| 9MM / ?? | 15 + 1 | 4" | BLACK |

RECOVERY DESCRIPTION
GLOCK, MODEL 19, 9MM, SEMI-AUTO PISTOL, 4 IN. BARREL, BLACK/BLACK POLYMER.

| RECEIVED FROM | STAR NO. | UNIT NO. | UNIT DESCRIPTION |
|---|---|---|---|
| NIEWDACH, ZBIGNIEW | 17629 | 177 | FORENSIC SERVICES SECTION |

| RECEIVED METHOD | RECEIVED FROM LOCATION |
|---|---|
| Dept.Mail | Other |

OTHER EVIDENCE
one magazine

nine 9mm CAL CARTRIDGES

HAMMER

CONDITION OF BORE

| SAFETY DEVICES | FUNCTION? | NO. TESTS | SENT TO STATE POLICE? |
|---|---|---|---|
| | | 0 | NO |

OPERATING CONDITION

REMARKS
*POLICE INVOLVED SHOOTING*

PO'S WEAPON

R/O DID NOT HANDLE NOR EXAMINE THE PISTOL.

THE INFORMATION WAS OBTAINED FROM THE INVENTORY SHEET.

Incident Number
R
D

H
T
3
3
1
5
0
1

| EXHIBITS TURNED OVER TO OTHER | STAR NO. | DATE |
|---|---|---|
| | | |

| DATA PREPARED BY | STAR NO. | DATE |
|---|---|---|
| ALONSO, ARMANDO | 6571 | 16-JUN-11 |

CPD-33.400(REV. 8/88) AUTOMATED          Thursday June 16 2011 7:48 AM

MhF-17

Miller 13 C 3225                                        FCRL 000233

**SWORN AFFIDAVIT**

| Location of Incident: 2050 West Monroe | Date: 06 June 2011 | Time: 0654 |
|---|---|---|

Summary of Statement(s):

recorded statement is attached

I, Lonora A Dumas _____ hereby state as follows: I have read the above summary and/or attached statement(s) in its entirety, reviewed it for accuracy and been given an opportunity to make corrections and additions to the statement. I swear and affirm, under penalties provided by law, that the information contained in the above summary and/or attached statement is true and accurate.

_____ (Signature of person making statement)

Lea Dumag (Print name)

10/6/11 (Date)

OFFICIAL SEAL
KRISTI M LYONS
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:12/01/12

State of Illinois
County of Cook

_____ (Notary Public)

_____ (Deputy Clerk)

Signed and sworn before me on this
06 day of October, 20 11

_____ (Print name)

_____ (Date)

Attachment No. 107
Complaint Log No. 1045896 / U#11-28

Created 4-5-11

Exhibit "L"

Miller 13 C 3225

FCRL 001068



LOG # 1045896 / U# 11-2B

Attachment # 108

Miller 13 C 3225        Exhibit [ ] "L"        FCRL 001069



LOG # 1058961 #41-00
Attachment # 96

EXHIBIT "M"

Miller 13 C 3225

FCRL 001046

Crime Scene Report 162683     Printed by PC0Q395 on 06-JUN-2011 01:39            Page 3 of 5

C11-25384
acp

| | | | |
|---|---|---|---|
| 12333235 4944329 1 | BULLET / AMMO / MAGAZINE | 8 - ROUND STAINLESS STEEL MAGAZINE FROM ABOVE HANDGUN. |
| 12333235 4944330 7 | BULLET / AMMO / MAGAZINE | "WIN" 9MM LUGER + P CARTRIDGES (1-IN CHAMBER, 6 IN MAGAZINE) |
| 12333238 4944331 1 | FIREARM | GLOCK, MODEL 19, 9MM, SEMI-AUTO PISTOL, 4 IN. BARREL, BLACK/BLACK POLYMER. |
| 12333238 4944332 1 | BULLET / AMMO / MAGAZINE | BLACK 15-ROUND MAGAZINE FROM ABOVE HANDGUN. |
| 12333238 4944333 9 | BULLET / AMMO / MAGAZINE | "WIN" 9MM LUPER +P CARTRIDGES (1-IN CHAMBER, 8-IN MAGAZINE) |
| 12333246 4944344 1 | CELL PHONE / PAGER | KYOCERA CRICKET BLACK CELL PHONE--NO BACK PORTION |
| 12333252 4944350 1 | CLOTHING / FUR | PAIR OF BLACK, WHITE, GRAY "HAVANA JOE"SIZE 8-81/2 |
| 12333252 4944351 1 | CLOTHING / FUR | PANTS "PARISH" BLUE JEANS SIZE 34 |
| 12333252 4944352 1 | CLOTHING / FUR | UNDERWEAR BLUE PLAID BOXERS W/BLOOD (NO SIZE) |
| 12333252 4944353 2 | CLOTHING / FUR | SOCKS (2 WHITE) |
| 12333252 4944354 1 | CLOTHING / FUR | WHITE TEE SHIRT W/BLOOD & CUT |
| 12333252 4944355 1 | OTHER | JOLIET "METRA" SCHEDULE |
| 12333254 4944359 1 | BIOLOGICAL | SWAB BOX CONT. 2 SWABS (1-WET & 1-DRY) FROM GRIPS, SLIDE PULL, MAGAZINE RELEASE FROM "S & W" HANDGUN INV# 12333235. |
| 12333256 4944363 1 | BIOLOGICAL | BIOLOGICAL SWAB BOX CONTAINING TWO BIOLOGICAL SWABS ONE WET/ONE DRY |
| 12333257 4944364 1 | BIOLOGICAL | SWAB BOX CONT. 2 SWABS (1-WET & 1-DRY) FROM GRIPS, SLIDE PULL, MAG. RELEASE FROM GLOCK HANDGUN INV # 12333238. |
| 12333260 4944367 1 | BIOLOGICAL | BIOLOGICAL SWAB COLLECTION BOX CONTAINING TWO BIOLOGICAL SWABS (ONE WET/ONE DRY) |
| 12333307 4945054 1 | OTHER | SEALED VEHICLE PAINT COLLECTION KIT-FROM FORD ESCAPE IL. LIC# L284556. |
| 12333315 4945127 3 | OTHER | USED SURGICAL BLADES IN PACKAGING-FROM VEHICLE PAINT COLLECTION KIT (MARKED "BRICK BLDG"- "UTILITY POLE" &"KNOWN VEH" |

Firearms

| Inventory No. | Gun Type | Description | Serial No. | Officer's Weapon | Comments |
|---|---|---|---|---|---|
| 12333235 | HANDGUN | SMITH & WESSON, MODEL 3953, 9MM SEMI-AUTO PISTOL, 3 1/2 IN.BARREL, S/S FINISH. | BDJ7694 | Yes | CLEAR& REGISTERED PER GUN DESK P/O BROOKS #12284 |
| 12333238 | HANDGUN | GLOCK, MODEL 19, 9MM, SEMI-AUTO PISTOL, 4 IN. BARREL, BLACK/BLACK POLYMER. | LCG704 | Yes | CLEAR & REGISTERED PER PFI N. DE COOK #5300 |

Crime Scene Photos

Crime Scene Video Exists **YES**

| Photo Type | Media Type | Scale Used | Photo Description |
|---|---|---|---|
| OVERALL | DIGITAL | | VIEWS FRONT OF 2050 W.MONROE ST. |
| OVERALL | DIGITAL | | VIEWS EAST SIDE OF BUILDING AND WALKWAY AT 2050 W. MONROE ST. |

Miller 13 C 3225          Exhibit           FCRL 000236
Exhibit N



C11-25384
ref

| | | |
|---|---|---|
| OVERALL | DIGITAL | VIEWS EAST SIDE OF BASEMENT ENTRY DOOR AT 2050 W. MONROE ST. |
| OVERALL | DIGITAL | VIEWS REAR BASEMENT DOOR NORTH SIDE OF BUILDING AT 2050 W. MONROE ST. |
| OVERALL | DIGITAL | VIEWS OF REAR OF BUILDING AT 2050 W. MONROE ST. |
| BOTH (OVERALL/CLOSE UP) | DIGITAL | VIEWS OF WOOD STAIRS AND KITCHEN WINDOW AT REAR OF 2050 W. MONROE ST. |
| OVERALL | DIGITAL | VIEWS OF REAR GATE AND ALLEY AT 2050 W. MONROE ST. |
| OVERALL | DIGITAL | VIEWS EAST IN ALLEY FROM 2050 W. MONROE ST. |
| BOTH (OVERALL/CLOSE UP) | DIGITAL | VIEWS OF DAMAGE AND YELLOW PAINT/MARKS SOUTHWEST CORNER OF BRICK BUILDING AT 28 S. SEELEY AVE. |
| OVERALL | DIGITAL | VIEWS FRONT OF BUILDING AT 28 S. SEELEY AVE. |
| OVERALL | DIGITAL | VIEWS SOUTH FROM 28 S. SEELEY AVE. |
| BOTH (OVERALL/CLOSE UP) | DIGITAL | EXT. & INT.VIEWS OF 2003 FORD ESCAPE AT APPROX. 29 S. SEELEY AVE. |
| OVERALL | DIGITAL | VIEWS NORTH FROM 29 S. SEELEY AVE. |
| BOTH (OVERALL/CLOSE UP) | DIGITAL | VIEWS OF CARTRIDGE CASES (MARKERS # 1 #2,) ON STREET PAVEMENT AT APPROX. 28 S. SEELEY AVE. |
| BOTH (OVERALL/CLOSE UP) | DIGITAL | FIRED BULLET (MARKER # 3) AT APPROX. 28 S. SEELEY AVE. |
| BOTH (OVERALL/CLOSE UP) | DIGITAL | CARTRIDGE CASE (MARKER #4), FROM DRIVER SEAT TO 2003 FORD ESCAPE AT 29 S. SEELEY AVE. |
| BOTH (OVERALL/CLOSE UP) | DIGITAL | CARTRIDGE CASE (MARKER #5), FROM FRONT PASS.FLOOR OF 2003 FORD ESCAPEAT 29 S. SEELEY AVE. |
| BOTH (OVERALL/CLOSE UP) | DIGITAL | BLACK MIRROR/ HOUSING (MARKER #6) ON GROUND IN ALLEY AT APPROX. 2034 W. MONROE ST. |
| BOTH (OVERALL/CLOSE UP) | DIGITAL | WHEELCOVER (MARKER #7) ON GROUND IN ALLEY AT APPROX. 2034 W. MONROE ST. |
| BOTH (OVERALL/CLOSE UP) | DIGITAL | YELLOW PAINT/ MARKS ON WOOD UTILITY POLE NEAR SOUTHEAST CORNER OF BUILDING AT 28 S. SEELEY AVE. |
| BOTH (OVERALL/CLOSE UP) | DIGITAL | FIRED BULLET (MARKER #8), FROM SIDEWALK PAVEMENT AT 30 S. SEELEY AVE. |
| OVERALL | DIGITAL | BLOOD ON STREET PAVEMENT AT APPROX. 29 S. SEELEY AVE. |
| BOTH (OVERALL/CLOSE UP) | DIGITAL | VIEWS OF FRONT OF BUILDING WITH ADDRESS AT 2128 W.MONROE ST. |
| BOTH (OVERALL/CLOSE UP) | DIGITAL | VIEWS OF WOMEN'S SANDALS ON SIDEWALK IN FRONT OF 2128 W. MONROE ST. |
| OVERALL | DIGITAL | VIEWS NORTH FROM SIDEWALK AT LOCATION OF WHITE PLASTIC CHAIRS AT APPROX. 103 S. SEELEY AVE. |
| BOTH (OVERALL/CLOSE UP) | DIGITAL | CARTRIDGE CASE (MARKER #9), ON REAR DRIVER SIDE FLOOR OF2003 FORD ESCAPE. |
| BOTH (OVERALL/CLOSE UP) | DIGITAL | WATER BOTTLE (MARKER #10), ON FRONT PASS. FLOOR AREA OF 2003 FORD ESCAPE. |
| BOTH (OVERALL/CLOSE UP) | DIGITAL | RED BASEBALL CAP (MARKER #11) ON FRONT PASS FLOOR AREA OF 2003 FORD ESCAPE. |
| BOTH (OVERALL/CLOSE UP) | DIGITAL | SUNGLASSES (MARKER #12) ON FRONT PASS. FLOOR AREA OF 2003 FORD ESCAPE. |
| BOTH (OVERALL/CLOSE UP) | DIGITAL | MISC. PAPERWORK (MARKER #13), ON FRONT PASS. FLOOR OF 2003 FORD ESCAPE. |
| CLOSE UP | DIGITAL | RIDGE IMPRESSIONS "A" & "B" FROM FRONT PASS DOOR WINDOW FRAME OF 2003 FORD ESCAPE. |
| | | RIDGE IMPRESSION "C" FROM DRIVER DOOR WINDOW |

PAGE 2

Miller 13 C 3225                                                      FCRL 000237



**ILLINOIS STATE POLICE**
Division of Forensic Services
Forensic Sciences Command
Forensic Science Center at Chicago

Case #: C11-25384
Initials: _acf_ Page #: 5
Date: 06/22/11

**FIREARM WORKSHEET** Revision Date (10/04)

EX#: 13 (fa) + 14 (mag) + 15 (9 uc) — RECEIVED FROM: Firearms Vault
OTHER AGENCY #S: RD# HT331501   INV# 12333238 — RECEIVED ON: 06/21/11
DESCRIPTION OF PACKAGE: ⑤ plastic bag → ⑤ white box → fa + [taped manila coin env → mag] + [taped manila coin env → 9 uc]

| BRAND: Glock | MODEL: 19 |

IMPORTER/ORIGIN: Glock, Inc. Smyrna, GA / Austria   FINISH: black polymer rec/ black steel sl
SERIAL #: LCG704   (REC) BUT/ FR (BBL) SL) CYL C/Y metal plate under muzzle/R side

CAL/GA: 9x19 (9 mm Luger)   RIFLING: 6R polygonal   BBL LENGTH: ~ 4"   OAL: _acf_
CONDITION OF BORE: unremarkable   RESIDUE: light fouling

CHAMBERS: _acf_   FLARES —— _acf_   MAG/CAP: Ex #14: staggered stack db/15 + 1 √ FF

**TYPE/ACTION:**
☐REVOLVER ☑PISTOL ☐RIFLE ☐S.G. ☐DERR ☐AIR
☐PIN TYPE ☑SEMI AUTO ☐LEVER ☐SINGLE SHOT
☐BREAK OPEN ☐FULL AUTO ☐PUMP ☐CHOKE____
☐SWING OUT ☐BLOW BACK ☐BOLT
ROTATION L R ☑RECOIL ☐O/U ☐OTHER
☐GAS ☐SXS

**FIRING MECHANICS:** EJ PORT/BF: G
☐HAMMER____
☑HMMRLS striker
☐SINGLE ACTION
Glock "Safe Action"
☑DOUBLE ACTION

**SAFETIES:** FUNCTIONAL: ☑YES ☐NO ☐NONE
☐GRIP ☑FIRING PIN BLOCK
☐MAGAZINE ☐TRANSFER BAR
☐NOTCH ☐HAMMER BLOCK
☐REBOUND ☐THUMB____
☑OTHER trigger safety/drop safety (not tested)

**CARTRIDGES SUBMITTED:** Ex #15: (9 uc)
- (9) Winchester 9 mm Luger +P uc
  - N case
  - B primer
  - Bonded JHP JC bullet
- No unusual characteristics

REMARKS: _Unless otherwise noted, images present do not reflect actual evidence but are merely demonstrative._
- slide must be actuated in order to discharge fa
- unable to measure LIMPS/GIMPS due to a lack of defined shoulders

TEST SHOTS: ☑LAB AMMO ☐EV. AMMO  13A1 & 13A2: WIN 9 mm Luger +P: N case, B primer, 124 gr. bonded JHP JC bullet
☑OPERABLE ☐INOPERABLE As Received   TRG PULL: SA _acf_ DA ~ 5 - 5.5#
L. Imp: See Remarks  G. Imp: See Remarks  IBIS: No per policy, PO firearm
LAB MARK: DICE: packaging only
REPACKAGING: Original   APR: _acf_ END DATE: 06/22/11

Miller 13 C 3225   Exhibit "O"   FCRL 000221



**ILLINOIS STATE POLICE**
Division of Forensic Services
Forensic Sciences Command
Forensic Science Center at Chicago

Case #: C11-25384
Initials: _acp_ Page #: 4
Date: 06/22/11

Revision Date (10/04)

**FIREARM WORKSHEET**

EX#: 10 (fa) + 11 (mag) + 12 (7 uc)          RECEIVED FROM: Firearms Vault

OTHER AGENCY #S: RD# HT331501   INV# 12333235          RECEIVED ON: 06/21/11

DESCRIPTION OF PACKAGE: (S) plastic bag → (S) white box → fa + [taped manila coin env → mag] + [taped manila coin env → 7 uc]

| | |
|---|---|
| BRAND: Smith & Wesson | MODEL: 3953 |
| IMPORTER(ORIGIN): Springfield, MA  USA | FINISH: silver alloy rec/matte stainless sl |
| SERIAL #: BDJ7694   (REC) BUTT FR BBL SL CYL C/Y L side | |
| CAL/GA: 9 mm Luger          RIFLING: 5R | BBL LENGTH: ~ 3.5"      OAL: _acp_ |
| CONDITION OF BORE: unremarkable | RESIDUE: light fouling |
| CHAMBERS: _acp_   FLARES: _acp_ | MAG/CAP: Ex #11: single stack db/8 + 1 √  FF |

| TYPE/ACTION: | | | | FIRING MECHANICS: | EJ PORT/BF: G/P |
|---|---|---|---|---|---|
| ☐REVOLVER | ☑PISTOL | ☐RIFLE | ☐S.G. ☐DERR ☐AIR | ☑HAMMER bobbed | |
| ☐PIN TYPE | ☑SEMI AUTO | ☐LEVER | ☐SINGLE SHOT | ☐HMMRLS | |
| ☐BREAK OPEN | ☐FULL AUTO | ☐PUMP | ☐CHOKE | ☐SINGLE ACTION | |
| ☐SWING OUT | ☐BLOW BACK | ☐BOLT | | ☑DOUBLE ACTION ONLY | |
| ROTATION L R | ☑RECOIL | ☐O/U | ☐OTHER | | |
| | ☐GAS | ☐SXS | | | |

| SAFETIES: | FUNCTIONAL: ☑YES ☐NO ☐NONE | CARTRIDGES SUBMITTED: Ex #12 (7 uc) |
|---|---|---|
| ☐GRIP | ☑FIRING PIN BLOCK | - (7) Winchester 9 mm Luger +P uc |
| ☑MAGAZINE | ☐TRANSFER BAR | - N case |
| ☐NOTCH | ☐HAMMER BLOCK | - B primer |
| ☐REBOUND | ☐THUMB _____ | - Bonded JHP JC bullet |
| ☐OTHER _____ | | - No unusual characteristics |

REMARKS:          Unless otherwise noted, images present do not reflect actual evidence but are merely demonstrative.

- slide must be actuated in order to discharge fa

TEST SHOTS: ☑LAB AMMO ☐EV. AMMO  10A1 & 10A2: WIN 9 mm Luger +P: N case, B primer, 124 gr. bonded JHP JC bullet

☑OPERABLE ☐INOPERABLE  As Received          TRG PULL: SA ~ _acp_ DA ~ 9 - 9.5#

L. Imp.: ~ .095 - .096"  G. Imp.: ~ .117 - .118"  IBIS: No per policy, PO firearm          LEFT: _acp_

LAB MARK: DICE: packaging only

REPACKAGING: Original          APR: _acp_ END DATE: 06/23/11

Miller 13 C 3225                    FCRL 000220

67-11
Compare to keeler

No leica trajectory test conducted

No Bullet Strikes to establish
the path of bullet

leica scan of scene done

call armony
forensic
# 1048947#

milton
waters



| Chicago Police Department | | General Order   G03-02-02 |
|---|---|---|
| **FORCE OPTIONS** | | |

| ISSUE DATE: | 23 September 2002 | EFFECTIVE DATE: | 01 October 2002 |
|---|---|---|---|
| RESCINDS: | G02-08-02 | | |
| INDEX CATEGORY: | Field Operations | | |

I.  **PURPOSE**

This directive explains the various levels of force options in the Use of Force Model that are appropriate for Department members' use when interacting with cooperative subjects, resistive subjects ("resisters"), and assailants.

II.  **POLICY**

    A.  Members will maintain a courteous and professional demeanor when dealing with the public.

    B.  Before taking any police action, sworn members will identify themselves as police officers unless identification would jeopardize the safety of the member or others or compromise the integrity of an investigation.

    C.  Members will select the appropriate level of force option based on a subject's actions and modify their selection of options as the subject offers less or greater resistance.

III.  **LEVEL OF FORCE RESPONSE OPTIONS GUIDELINES**

    A.  Cooperative Subject: a person who is compliant without the need for physical force. The following response options are appropriate when dealing with a cooperative subject:

        1.  Social Control/Police Presence

            a.  Social control/police presence is established through identification of authority and proximity to the subject. Police presence may result in conforming behavior.

            b.  Social control/police presence, used alone, is the only force option which is appropriate for use with subjects who are cooperative without the need for direction from law enforcement personnel.

        2.  Verbal Control

            a.  Verbal control consists of persuasion, advice, and warning. It includes instruction or direction from a member in the form of verbal statements or commands. Verbal control may result in conforming behavior.

            b.  Whenever practical, members will attempt to de-escalate confrontations by utilizing verbal control techniques prior to, during, and after the use of physical force.

    B.  Resister: a person who is uncooperative. Resisters are further subdivided into two categories:

        1.  Passive Resister: a person who fails to comply (non-movement) with verbal or other direction. In addition to the response options listed in Item III-A, the following response options are appropriate when dealing with a passive resister:

            a.  Holding Techniques

                Holding consists of techniques such as a firm grip, grabbing an arm, wristlocks, and come-along holds (i.e., escort holds that are not elevated to pain compliance techniques), as well as any combination of the above. Holding may result in conforming behavior.

Miller 13 C 3225

FCRL 001121

TUESDAY, NOVEMBER 8, 2011 | CHICAGO SUN-TIMES | 19

# STELLA'S COLUMN
WITH STELLA FOSTER sfoster@suntimes.com

## Belafonte book



 



Harry Belafonte    Vivica Fox    Irv Kupcinet

*Keep in
your
notes
file.
all.*

Miller 13 C 3225      EXHibit Q      FCRL 001232

EXHibit

U# 11-03 / Log #1042470 18A
Donte Gross - Non fatal, gunshot wound to left thumb.

Prepare file to go to SAO

To Do

~~1. Obtain Donte Gross Medical Records (Provident Hospital)~~ — 6 JAN 2011

~~2. e-Track Crime Scene Processing Report ASAP~~

~~3. e-Track Inventory List Report ASAP~~

~~4. Meet with Sup. Ordower to schedule meeting at ISP~~ AFTER MEETING

~~5. Meet with Duffy RE Inventory List & Crime Scene Processing Report~~

*(handwritten, right margin)* E-TRACK 1 WEEK ISP REQUEST FORM

*(handwritten)* 2 - DEFERRED

Work Completed

6. Arrest Report/Mug Shots
7. Case Report
8. Case Supplementary Report
9. Officer Matthews (shooter) TRR
10. Officer Matthews (shooter) Officer's Battery Report
11. PCAD Reports
12. OEMC Tapes/Reports Ordered
13. Canvass
14. Canvass T/F
15. Audio Interview of Witness Celeste Smith
16. Audio Interview of Witness Officer Vega
17. Audio Interview of Shooter Officer Matthews
18. PODs ordered – Per Patrick – follow up
19. Victim Donte Gross Interviewed – Per Patrick – follow up (not in file)
20. Unmarked Police Vehicle: No In/Car Camera – Per Patrick

Miller 13 C 3225

FCRL 001233

## Cook County Health and Hospitals System

1900 West Polk Street, Chicago, Illinois 60612

Patient Name: MILLER, AARON D
Patient Type: n/a
Birth Date: 12/17/1976
Gender: Male
FIN: n/a

Admission Date: n/a
Discharge Date: n/a

MRN: 00484056z; 004749104c

CMRN: 1006590988

---

## Discharge Summary

---

4.        Seizure disorder NOS

**Significant History, Physical Examination and Hospital Course:**
34M who arrived around 7:45am with gunshot wounds to the right arm and right chest. He had desaturated in the field and had been hypotensive and a right needle thoracostomy had been performed. On arrival, his primary survey was significant for tachycardia and hypertension. Bilateral breath sounds could be heard. GCS was 13 for inappropriate vocalization. CAGE and abuse were unable to be obtained. While initiating secondary survey, Mr. Miller became increasingly tachycardic and hypertensive. He was intubated. A right sided chest tube was placed with about 200cc of sanguinous output. He then became bradycardic to the 30s and hypotensive. A left femoral cordis was placed and 2L LR were bolused. His heart rate recovered spontaneously prior to fluid bolusing. His blood pressure responded to the fluids. Blood was called for and began to transfuse. He was brought emergency to the operating room for a damage control laparotomy. Initial injuries included a grade IV liver laceration, 2 duodenal injuries, 2 jejunal injuries, and bleeding from the head of the pancreas.

**Hospital Course:**

On 6/5/11 he underwent a damage control laparotomy, oversewing of the jejunal and duodenal injuries, packing of the liver with the use of hemostatic agents such as floseal and gel foam, oversewing of areas of bleeding related to the pancreatic head. 14 laps were left in the abdomen and a Bogota bag was placed. He was then brought in critical condition to the ICU for further resuscitation.

He went back to the OR on 6/7/11 for ex lap, washout, removal of laps definitive primary repair of the small bowel injuries, repacking of the liver and use of hemostatic agens, placement of an NGT past the duodenal repairs, 3 laps were left in the belly, a casette cover was placed, and a wound vac above it

On 6/9 the patient went for washout with 10L NS and takedown of VAC. Doudenal injury was found to be persistant with no obvious diaphramatic injury. Duodenum was repaired primarily with omental patch. NG DHT was placed. ND tube was placed prximal to the injury. Retrograde duodenal tube placed. Rocky placed. JP placed. Cholanglogram revealed to obvious leakage.

OR for Washout on 6/12, 6/14

OR for Washout and trach 6/16

OR for Washout and left Rocky placement on 6/18

OR for Washout and placement of 2 right Rocky drains (prior Rocky dislodged that AM), and additional Rocky on the left to make 2 left Rockys 6/20

On 6/21, his urine was positive for pseudomonas for which he completed a 7 day course of zosyn. On 6/23, his blood cultures were positive for gram +                    cocci.

Report Request ID:  11728021                    Page 16 of 2,567                    Facility:  n/a
                                                                                    Location:  n/a

CONFIDENTIAL: If the reader of this report is not the intended recipient; or the employee or agent responsible, you are hereby notified that any reading, dissemination, distribution or copying of this communication is strictly prohibited. If you receive this communication in error, please notify the appropriate party immediately.

Exhibit R1

**Cook County Health and Hospitals System**

1900 West Polk Street, Chicago, Illinois 60612

Patient Name: MILLER, AARON D
Patient Type: n/a
Birth Date: 12/17/1976
Gender: Male
FIN: n/a

Admission Date:  n/a
Discharge Date:  n/a

MRN: 00484056z; 004749104c

CMRN: 1006590988

---

## Progress Note Inpt

**Addendum by STARR MD, FREDERIC L on July 31, 2011 09:33**
**Attending addendum:**

Pt seen and examined on rounds with resident.  Agree with above.

**Summary of Assessment and Plan:**

mental status improved today -
EEG shows possible seizure focus
LP today to r/o infectious process
Rt rocky now out.  No output in last 24 hrs
WBC 13.4 today - on meropenam day 4/14 for serratia bacteremia, and vanco day 6 for bacteremia.
Neurology following
TF at goal

*Electronically Authored On:  31-Jul-11 09:33*
*Electronically Signed By: STARR MD, FREDERIC L*
*SH - Trauma - Attending*
*PAGER BUS: 312 333 4365*

**Admit information**:  34 year old male with 2 GSW to right upper chest, abdomen and 4 GSW to right upper extremity.

A right chest tube was placed in resus and he was brought emergently for a damage control laparotomy.

Injuries included
1. grade IV liver laceration
2. bullet wounds to the 1st and second parts of the duodenum
3. vascular injury to the head of the pancreas
4. jejunal injuries

On 6/5/11 he underwent a damage control laparotomy, oversewing of the jejunal and duodenal injuries, packing of the liver with the use of hemostatic agents such as floseal and gel foam, oversewing of areas of bleeding related to the pancreatic head.  14 laps were left in the abdomen and a Bogota bag was placed.  He was then brought in critical condition to the ICU for further resuscitation.

He went back to the OR on 6/7/11 for ex lap, washout, removal of laps definitive primary repair of the small bowel injuries, repacking of the liver and use of hemostatic agens, placement of an NGT past the duodenal repairs, 3 laps were left in the belly. a casette cover was placed, and a wound vac above it

---

Report Request ID:  11728021           Page 456 of 2,567          Facility:  n/a
                                                                    Location:  n/a

CONFIDENTIAL:.If the reader of this report is not the intended recipient; or the employee or agent responsible, you are hereby notified that any reading, dissemination, distribution or copying of this communication is strictly prohibited. If you receive this communication in error, please notify the appropriate party immediately.

Exhibit R2

## Cook County Health and Hospitals System

1900 West Polk Street, Chicago, Illinois 60612

Patient Name: MILLER, AARON D
Patient Type: n/a
Birth Date: 12/17/1976
Gender: Male
FIN: n/a

Admission Date:  n/a
Discharge Date:  n/a

MRN: 00484056z; 004749104c

CMRN: 1006590988

---

### Progress Note Inpt

---

Now patient is status post bringback on 6/9 for washout with 10L NS and takedown of VAC. Doudenal injury was found to be persistant with no obvious diaphramatic injury. Duodenum was repaired primarily with omental patch. NG DHT was placed. NG remains. ND tube was placed prximal to the injury. Retrograde duodenal tube placed. Rocky placed. JP placed. Cholangiogram revealed to obvious leakage.

OR for Washout 6/12
abdominal washout, replacement of skirted VAC, and completion of retrograde duodenostomy tube

OR for Washout 6/14

OR for Washout and trach 6/16

OR for Washout and left Rocky placed 6/18

OR for Washout and 2 left Rockys and 2 right Rockys placed 6/20

OR for Washout and replacement of retrograde jejunostomy tube 6/22 , Febrile, OR 2 days ago, urine culture positive for pseudomonas, on zosyn; blood cultures positive for gram positive cocci in clusters 1/2- awaiting speciation

OR for washout, LOA, primary repair of jejunum, endoscopic G tube, and primary closure of skin on 6/24/11

6/26: Hemoglobin dropped to 5.7 and patient was transfused with 4u PRBC and 4 FFP and take to OR where they found clotted blood and SB mesenteric bleeding treated with flo-seal right JP placed, skin closed.

OR on 6/28 for abdominal washout. Flushing of rocky drains held.

OR for washout on 7/1, additional rocky placed on right. Pt had witnessed tonic clonic seizure on 7/21, and had been worked up day prior for similar episode. Neurology consulted.

7/26 - patient had seizure yesterday. Neuro recommending Dilantin (goal 10-20).

EEG and MRI done. Echo done per ID recs. No sz's since 7/25 ,

**Overnight:** Pt remained afebrile overnight, no febrile spikes, discussions with neurology and radiology on previiosu day yielded recommendations to perform LP to rule out infectious etiology to the patient's change in mental status/possible infectious etiology to isolated new-onet seizures. Right Flank Rocky Drains advanced out completely this AM, new ostomy appliacnces attached.

**Current medications:**
Inpatient Medications

Report Request ID:  11728021

Page 457 of 2,567

Facility:  n/a
Location:  n/a

CONFIDENTIAL: If the reader of this report is not the intended recipient; or the employee or agent responsible, you are hereby notified that any reading, dissemination, distribution or copying of this communication is strictly prohibited. If you receive this communication in error, please notify the appropriate party immediately.

## Cook County Health and Hospitals System

1900 West Polk Street, Chicago, Illinois 60612

Patient Name: MILLER, AARON D
Patient Type: n/a
Birth Date: 12/17/1976
Gender: Male
FIN: n/a

Admission Date: n/a
Discharge Date: n/a

MRN: 00484056z; 004749104c

CMRN: 1006590988

---

## Progress Note Inpt

dilantin reloaded.
trach capped
wounds to wtd
tol tf
dispo pending in custody options meeting today

ajd

Electronically Authored On: 03-Aug-11 09:44
Electronically Signed By: DENNIS DO, ANDREW
SH - Trauma - Physician
PAGER BUS: 312 333 1862

## Progress Note, Acute Care

Patient: **MILLER, AARON D**      MRN: **004749104c**      FIN: **0704874452**
Age: **34 years**    Sex: **Male**    DOB: **12/17/1976**
Associated Diagnoses: **None**
Author: **BALLO MD, RANA M**

### Basic Information
**Admit information**: 34 year old male with 2 GSW to right upper chest, abdomen and 4 GSW to right upper extremity.

A right chest tube was placed in resus and he was brought emergently for a damage control laparotomy.

Injuries included
1. grade IV liver laceration
2. bullet wounds to the 1st and second parts of the duodenum
3. vascular injury to the head of the pancreas
4. jejunal injuries

On 6/5/11 he underwent a damage control laparotomy, oversewing of the jejunal and duodenal injuries, packing of the liver with the use of hemostatic agents such as floseal and gel foam, oversewing of areas of bleeding related to the pancreatic head. 14 laps were left in the abdomen and a Bogota bag was placed. He was then brought in critical condition to the ICU for further resuscitation.

He went back to the OR on 6/7/11 for ex lap, washout, removal of laps definitive primary repair of the small bowel injuries, repacking of the liver and use of hemostatic agens, placement of an NGT past the duodenal repairs. 3 laps were left in the belly, a casette cover was placed, and a wound vac above it

Report Request ID:  11728021                  Page 472 of 2,567                 Facility:  n/a
                                                                               Location:  n/a

CONFIDENTIAL: If the reader of this report is not the intended recipient; or the employee or agent responsible, you are hereby notified that any reading, dissemination, distribution or copying of this communication is strictly prohibited. If you receive this communication in error, please notify the appropriate party immediately.

Exhibit R3

## Cook County Health and Hospitals System

1900 West Polk Street, Chicago, Illinois 60612

Patient Name: MILLER, AARON D
Patient Type: n/a
Birth Date: 12/17/1976
Gender: Male
FIN: n/a

Admission Date: n/a
Discharge Date: n/a

MRN: 00484056z; 004749104c

CMRN: 1006590988

---

## Progress Note Inpt

---

Now patient is status post bringback on 6/9 for washout with 10L NS and takedown of VAC. Doudenal injury was found to be persistant with no obvious diaphramatic injury. Duodenum was repaired primarily with omental patch. NG DHT was placed. NG remains. ND tube was placed prximal to the injury. Retrograde duodenal tube placed. Rocky placed. JP placed. Cholangiogram revealed to obvious leakage.

OR for Washout 6/12
abdominal washout, replacement of skirted VAC, and completion of retrograde duodenostomy tube

OR for Washout 6/14

OR for Washout and trach 6/16

OR for Washout and left Rocky placed 6/18

OR for Washout and 2 left Rockys and 2 right Rockys placed 6/20

OR for Washout and replacement of retrograde jejunostomy tube 6/22 , Febrile, OR 2 days ago, urine culture positive for pseudomonas, on zosyn; blood cultures positive for gram positive cocci in clusters 1/2- awaiting speciation

OR for washout, LOA, primary repair of jejunum, endoscopic G tube, and primary closure of skin on 6/24/11

6/26: Hemoglobin dropped to 5.7 and patient was transfused with 4u PRBC and 4 FFP and take to OR where they found clotted blood and SB mesenteric bleeding treated with flo-seal right JP placed, skin closed.

OR on 6/28 for abdominal washout. Flushing of rocky drains held.

OR for washout on 7/1, additional rocky placed on right. Pt had witnessed tonic clonic seizure on 7/21, and had been worked up day prior for similar episode. Neurology consulted.

7/26 - patient had seizure yesterday. Neuro recommending Dilantin (goal 10-20). EEG and MRI done. Echo done per ID recs. No sz's since 7/25

8/1 - trach downsized to 6 portex fenestrated and capped, ot able to voice.

8/2 - passed PO challenge, started on pureed diet. , **24 hour events:** Texas catheter removed yesterday, pt able to void independently. Received dilantin load yesterday with dilantin level within therapeutic range. Psych consulted yesterday, recommended not to restart meds. Started on pureed diet yesterday, which he tolerated well overnight..

---

Report Request ID: 11728021

Page 473 of 2,567

Facility: n/a
Location: n/a

CONFIDENTIAL: If the reader of this report is not the intended recipient; or the employee or agent responsible, you are hereby notified that any reading, dissemination, distribution or copying of this communication is strictly prohibited. If you receive this communication in error, please notify the appropriate party immediately.

## Cook County Health and Hospitals System

1900 West Polk Street, Chicago, Illinois 60612

Patient Name: MILLER, AARON D
Patient Type: n/a
Birth Date: 12/17/1976
Gender: Male
FIN: n/a

Admission Date:　n/a
Discharge Date:　n/a

MRN: 00484056z; 004749104c

CMRN: 1006590988

---

| Progress Note Inpt |
|---|

Documented Medications
　　Documented
　　　　loratadine: 10 MG, PO, Daily, 30 TAB
　　　　mirtazapine 30 mg oral tablet:
　　　　quetiapine 300 mg oral tablet:
**Problem List:** .
　　All Problems
　　　　Chronic bronchitis NOS / 491.9 / Confirmed
　　　　INJURY BY OTHER AND UNSPECIFIED FIREARM, UNDETERMINED WHETHER ACCIDENTALLY OR
　　　　　　PURPOSELY INFLICTED / E985.4 / Confirmed
　　　　Shock following injury NOS / 958.4 / Confirmed
　　　　LACERATION OF LIVER, MAJOR, WITH OPEN WOUND INTO CAVITY / 864.14 / Confirmed
　　　　Injury of duodenum with open wound into abdominal cavity / 863.31 / Confirmed
　　　　Injury of small intestine with open wound into abdominal cavity NOS / 863.30 / Confirmed
　　　　TRAUMATIC HEMOTHORAX WITH OPEN WOUND INTO THORAX / 860.3 / Confirmed
　　　　Injury of diaphragm with open wound into cavity / 862.1 / Confirmed
　　　　Injury of head of pancreas with open wound into abdominal cavity / 863.91 / Confirmed

**Physical Examination**
　**VS/Measurements**
　Vital Signs

| | | | |
|---|---|---|---|
| 6/30/2011 07:00 | Type of Temperature Taken | Bladder | |
| | **Temperature Bladder** | **38.1 DegC** | **HI** |
| | Calculated Temperature Bladder | | 100.6 DegF |
| | Type of Heart Rate | Cardiac monitor | |
| | Heart Rate | 96 bpm | |
| | Respiratory Rate | 19 breaths/min | |
| | Mean Arterial Pressure, Cuff | | 70 mmHg |
| | NIBP Site | Arm, Left | |
| | MAP | 85 mmHg | |
| | CVP | 5 mmHg | |
| | Oxygen Saturation | 99 % | |
| | Oxygen Delivery Device | Ventilator | |
| | SPO2 Probe Location | Left, Finger | |
| | **Capillary Glucose** | **156 mg/dL** | **HI** |
| | Reason for Vital Signs | Routine | |
| | Systolic Blood Pressure | 105 mmHg | |
| | **Diastolic Blood Pressure** | **53 mmHg** | **LOW** |
| | Arterial Systolic Blood Pressure | | 116 mmHg |
| | Arterial Diastolic Blood Pressure | | 70 mmHg |
| 6/30/2011 06:00 | Type of Temperature Taken | Bladder | |
| | **Temperature Bladder** | **38.4 DegC** | **HI** |

---

Report Request ID: 11728021　　　　　Page 268 of 2,567　　　　　Facility: n/a
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　Location: n/a

CONFIDENTIAL: If the reader of this report is not the intended recipient; or the employee or agent responsible, you are hereby notified that any reading, dissemination, distribution or copying of this communication is strictly prohibited. If you receive this communication in error, please notify the appropriate party immediately.

Exhibit R4

## Cook County Health and Hospitals System

1900 West Polk Street, Chicago, Illinois 60612

Patient Name: MILLER, AARON D
Patient Type: n/a
Birth Date: 12/17/1976
Gender: Male
FIN: n/a

Admission Date: n/a
Discharge Date: n/a

MRN: 00484056z; 004749104c

CMRN: 1006590988

---

### Progress Note Inpt

|  |  |  |  |
|---|---|---|---|
|  | Calculated Temperature Bladder |  | 101.1 DegF |
|  | Type of Heart Rate | Cardiac monitor |  |
|  | Heart Rate | 100 bpm |  |
|  | **Respiratory Rate** | **21 breaths/min** | **HI** |
|  | Mean Arterial Pressure, Cuff |  | 77 mmHg |
|  | NIBP Site | Arm, Left |  |
|  | MAP | 95 mmHg |  |
|  | CVP | 8 mmHg |  |
|  | Oxygen Saturation | 99 % |  |
|  | Oxygen Delivery Device | Ventilator |  |
|  | SPO2 Probe Location | Left, Finger |  |
|  | Reason for Vital Signs | Routine |  |
|  | Systolic Blood Pressure | 116 mmHg |  |
|  | **Diastolic Blood Pressure** | **58 mmHg** | **LOW** |
|  | Arterial Systolic Blood Pressure |  | 138 mmHg |
|  | Arterial Diastolic Blood Pressure |  | 74 mmHg |
| 6/30/2011 05:35 | Respiratory Peak Flow | 60 L/min |  |
| 6/30/2011 05:00 | Type of Temperature Taken Bladder |  |  |
|  | **Temperature Bladder** | **38.5 DegC** | **HI** |
|  | Calculated Temperature Bladder |  | 101.3 DegF |
|  | Type of Heart Rate | Cardiac monitor |  |
|  | Heart Rate | 94 bpm |  |
|  | **Respiratory Rate** | **21 breaths/min** | **HI** |
|  | Mean Arterial Pressure, Cuff |  | 75 mmHg |
|  | NIBP Site | Arm, Left |  |
|  | MAP | 89 mmHg |  |
|  | CVP | 7 mmHg |  |
|  | Oxygen Saturation | 99 % |  |
|  | Oxygen Delivery Device | Ventilator |  |
|  | SPO2 Probe Location | Left, Finger |  |
|  | Reason for Vital Signs | Routine |  |
|  | Systolic Blood Pressure | 114 mmHg |  |
|  | **Diastolic Blood Pressure** | **55 mmHg** | **LOW** |
|  | Arterial Systolic Blood Pressure |  | 128 mmHg |
|  | Arterial Diastolic Blood Pressure |  | 70 mmHg |
| 6/30/2011 04:00 | Type of Temperature Taken Bladder |  |  |
|  | **Temperature Bladder** | **38.6 DegC** | **HI** |
|  | Calculated Temperature Bladder |  | 101.5 DegF |
|  | Type of Heart Rate | Cardiac monitor |  |
|  | Heart Rate | 100 bpm |  |
|  | **Respiratory Rate** | **23 breaths/min** | **HI** |
|  | Mean Arterial Pressure, Cuff |  | 84 mmHg |

---

CONFIDENTIAL: If the reader of this report is not the intended recipient; or the employee or agent responsible, you are hereby notified that any reading, dissemination, distribution or copying of this communication is strictly prohibited. If you receive this communication in error, please notify the appropriate party immediately.

## Cook County Health and Hospitals System

1900 West Polk Street, Chicago, Illinois 60612

Patient Name: MILLER, AARON D
Patient Type: n/a
Birth Date: 12/17/1976
Gender: Male
FIN: n/a

Admission Date: n/a
Discharge Date: n/a

MRN: 00484056z; 004749104c

CMRN: 1006590988

---

### Neurology Inpt

< 2.5 (8/5)
Albumin 3.3 (up from low of 1.4 in early June)
Cr. normal.

Imp:
* New onset of seizures this admit- should be on anticonvulsants for next 6 months or more and descision to taper meds can be made if seizures do not recur.
Typical dosing is 5 - 7 mg/kg/day. Last body wieght recorded was 91kg on 7/26. (91kg x 5 mg/kg/d = 405mg/day)
Please ensure patinet is recieving dose as prescribed (200mg twice daily)-- the precipitous drop in his level in 3 days would suggest he is not recieiving the medication as opposed to a dosing problem.

If seizures recur check level.

R. Bartt, MD

*Electronically Authored On: 07-Aug-11 13:58*
*Electronically Signed By: BARTT MD, RUSSELL*
 *PH -MEDICINE*
 *PAGER BUS: 312 400 0531*

---

Document Type:
Service Date/Time:
Result Status:
Perform Information:
Sign Information:

Neurology Inpt
8/7/2011 16:24 CDT
Unauth
LEE NOLL MD,KATHRYN (8/7/2011 16:35 CDT)
LEE NOLL MD,KATHRYN (8/7/2011 17:01 CDT)

* This is a 34 y/o male known to this service with recent history of multiple GSW requiring multiple surgeries with new-onset seizures. These occurred July 20th, 21st, and 25th and were described as generalized shaking. The service was reconsulted for recs on AED for discharge. The patient is currently subtherapeutic on Dilantin at <2.5 (down from 18.1 8/2) with albumin 3.2. There have not been any seizure episodes since July 25th. There were no acute events overnight.

PE
VS: T 98.8 HR 90 HP 134/78 O2 98% ORA
Const: NAD. WDWN. pleasant.
CV: extremities well-perfused. No edema, erythema, or lesions.
MS/L: alert and oriented to person, place, time, and situation. speech fluent, comprehension intact. language appropriate.
CN: EOMI. gaze is normal. facial symmetry.
Motor: +5/5 UE and LE. tone normal. no abnormal movements.

---

Report Request ID: 11728021

Page 638 of 2,567

Facility: n/a
Location: n/a

CONFIDENTIAL: If the reader of this report is not the intended recipient; or the employee or agent responsible, you are hereby notified that any reading, dissemination, distribution or copying of this communication is strictly prohibited. If you receive this communication in error, please notify the appropriate party immediately.

Exhibit R5

# Cook County Health and Hospitals System

1900 West Polk Street, Chicago, Illinois 60612

Patient Name: MILLER, AARON D
Patient Type: n/a
Birth Date: 12/17/1976
Gender: Male
FIN: n/a

Admission Date: n/a
Discharge Date: n/a

MRN: 00484056z; 004749104c

CMRN: 1006590988

---

| Neurology Inpt |
|---|

LP results reviewed and are not concerning for infectious process. Pt has since returned to baseline and is no longer febrile. Will sign off, please call us if we can be of any further assistance.

Reena Ghode
x3448

*Electronically Signed By: MANCUSO DO, JOEY M*
*SH - Neurosurgery - Resident*
*PAGER BUS: 312 390 2293*

*Electronically Signed On: 01-Aug-11 20:55*
*BARTT MD, RUSSELL*
*PH -MEDICINE*
*PAGER BUS: 312 400 0531*

---

Document Type:
Service Date/Time:
Result Status:
Perform Information:
Sign Information:

Neurology Inpt
8/7/2011 13:42 CDT
Auth (Verified)
BARTT MD,RUSSELL (8/7/2011 13:58 CDT)
BARTT MD,RUSSELL (8/7/2011 13:58 CDT)

Patient seen by our service at times over the hospital stay.
Asked to be seen again today for anticonvulsant dosing advice.

No seizures have occurred recently.
Patient has no recollection of seizures happening. He asked "can seizures kill me?"
He denies any prior history of seizures or convulsions in his life.

He is able to swallow pills and capsules without problem.
Prescribed 200mg twice daily capsules.

Face symmetric.
No nystagmus, EOMI.
No drift, 5/5 in proximal UE and distal UE and LE.

Labs:
Dilantin level 18.1 (8/2)

Report Request ID: 11728021          Page 637 of 2,567          Facility: n/a
                                                                Location: n/a

CONFIDENTIAL: If the reader of this report is not the intended recipient; or the employee or agent responsible, you are hereby notified that any reading, dissemination, distribution or copying of this communication is strictly prohibited. If you receive this communication in error, please notify the appropriate party immediately.

Exhibit R6



Miller 13 C 3225 EXhibits-1 FCRL 001773



Miller 13 C 3225　　　　　Exhibit 3-2　　　　　FCRL 001772





Miller 13 C 3225

FCRL 001770



Miller 13 C 3225

Exhibit 5-04

FCRL 001756



Miller 13 C 3225

FCRL 001757

| Chicago Police Department | | Uniform and Property | U04-02 |
|---|---|---|---|
| **DEPARTMENT APPROVED WEAPONS AND AMMUNITION** | | | |

| ISSUE DATE: | 23 July 2007 | EFFECTIVE DATE: | 24 July 2007 |
|---|---|---|---|
| RESCINDS: | G07-01 | | |
| INDEX CATEGORY: | Uniform and Personal Equipment | | |

**I. PURPOSE**

This directive:

A. provides specifications relative to prescribed revolvers, semiautomatic pistols, and ammunition for sworn members.

B. introduces the firearm transition process for Department members hired:

    1. on or before 01 December 1991 who elect to transition from a revolver to a Department-approved semiautomatic pistol as their prescribed firearm, or elect to carry a Department approved semiautomatic pistol as an alternate / auxiliary firearm.

    2. after 01 December 1991 who elect to transition from their Department approved double-action only semiautomatic pistol; to a Department approved striker-fired pistol, or elect to carry a striker-fired pistol as an alternate / auxiliary firearm.

C. delineates Department approved firearms.

D. introduces a newly approved firing system, the striker-fired system.

E. discontinues the:

    1. Chicago Police – Special Weapons Certificate (CPD-63.337).

    2. Chicago Police – Approved Handgun Certificate (CPD-63.336).

F. introduces the Firearms Training and Certification available through ICLEAR.

G. discontinues the Loan Receipt (CPD-20.012).

H. introduces the Firearm Loan Receipt (CPD-63.344).

I. Continues the use of:

    1. Certifying Statement-Firearms Form (CPD-11.702).

    2. Firearms Purchase Authorization/Sworn Members (CPD-31.220).

    3. Firearms Registration Application (CPD-31.562).

    4. Affidavit of Employment (CPD-31.563).

    5. Equipment Control Log-Special Equipment Vehicle (CPD-23.175).

**II. POLICY**

A. Sworn members may only arm themselves with the firearms, ammunition, aerosol devices, and Taser devices as specifically approved by this directive.

B. Any other weapon as described in 720 ILCS 5/24-1 or 720 ILCS 5/33A-1 is strictly prohibited.

C. While sworn members are permitted to carry firearms during nonduty hours, they are instructed to refrain from doing so when there is a likelihood that they will be consuming alcoholic beverages or medications which may impair their physical and/or mental abilities. Nothing in this policy statement is to be construed as diminishing a sworn member's responsibility to take appropriate police action, which can be as little as summoning the police for help, when observing a crime in progress.

*Exhibit 3K"*

*EXHibit 7"*

D. A sworn member will not lend his firearm to any other person nor will a sworn member possess or carry a firearm registered to another person except as provided by a Department directive. During an emergency situation, however, a sworn member may lend his firearm to another sworn member or person who has been summoned to assist him in the performance of his official duty.

E. The Department will provide training to ensure that weapons are safely handled and accordance with local, state, and federal laws and Department policy.

F. Department members must qualify with all prescribed, alternate prescribed, or auxiliary weap to carrying the weapon on or off duty. The Education and Training Division will maintain a rec weapons a Department member is approved to carry.

G. Department members will possess a valid Firearm Owner's Identification Card (FOID).

   NOTE: Members will provide proof of a valid FOID card during the annual pr weapon qualification.

III. **GENERAL INFORMATION**

A. The prescribed firearm for all sworn members hired on or before 01 December 1991 is a Department approved revolver or semiautomatic pistol. Department members hired on or before 01 December 1991 electing to carry an approved semiautomatic pistol as their prescribed firearm must first successfully complete the transition process.

B. The prescribed firearm for all sworn members hired after 01 December 1991 is a Department approved semiautomatic pistol.

C. Department members hired after 01 December 1991 may transition to a Department approved striker-fired semiautomatic pistol. A transition to a revolver as a prescribed firearm will not be permitted for members hired after 01 December 1991.

D. Department members will not be required to transition to a new firing system in order to comply with this directive.

E. Authorized Department members can access current approved Firearms Training and Certification of all members by logging onto the ICLEAR system.

IV. **AUTHORIZATIONS AND RESTRICTIONS FOR WEAPONS AND EQUIPMENT**

The following provisions apply only to weapons intended to be used in the performance of police-related duties:

A. Revolvers will not be cocked nor fired single action.

B. Uniformed sworn members will:

   1. carry their prescribed firearm or alternate prescribed firearm in a Department-approved holster.

   2. not carry more than two exposed firearms.

C. When in citizen's dress, members will carry their firearms and extra ammunition in Department-approved holsters and ammunition carriers.

D. The appropriate deputy superintendent or the Commander, Department Administration may authorize the use of additional weapons / ammunition by specialized units within the Department. This authorization will be in the form of a To-From-Subject report. Copies of the authorization will be maintained in each bureau with one copy forwarded to the Education and Training Division.

   NOTE: The To-From-Subject report will provide justification for the use of the additional weapons/ammunition and a recommended certification procedure to be administered by the Education and Training Division.

V.    INTERSTATE TRANSPORT OF FIREARMS OR AMMUNITION

     A.    A sworn member whose duty assignment involves the interstate transport of a person in custody or otherwise requires them to be armed while traveling outside of the State of Illinois will conform to federal, state, and local laws.

     B.    A sworn member will ascertain and comply with the regulations governing the possession and transportation of firearms/ammunition while using a public common carrier.

     C.    Off duty sworn members will comply with all jurisdictional regulations pertaining to possession and transportation of firearms and ammunition when traveling outside the State of Illinois.

VI.    INSPECTION

     A.    District/Unit commanders will designate a location within the police facility for loading and unloading revolvers and semiautomatic pistols.

         1.    This location will be provided with a Firearm Safety Center.

         2.    The Firearm Safety Center is a free-standing device constructed of ballistic panels and a removable compartment lining. The device is manufactured in such a way as to contain a fired projectile in the event of an unintentional or negligent discharge.

     B.    Supervising sworn members will ensure that:

         1.    firearms carried on duty are regularly inspected for cleanliness and serviceability

         2.    only Department-approved ammunition is used and in serviceable condition.

     C.    Manual inspection of a semiautomatic pistol can only be performed by a supervi completed the Roll Call Pistol Procedure Class offered by the Education and Training Di



     D.    Roll call weapon's inspection will be conducted each Wednesday.

VII.    REVOLVERS

     A.    Prescribed Revolver

         When on duty, sworn members hired on or before 01 December 1991 who choose not to transition to a semiautomatic pistol will be equipped with a Department-approved revolver which conforms to the following specifications:

         1.    Approved Manufacturers

             a.    Colt

               Prohibited Models: Diamondback and Police Positive.

             b.    Smith & Wesson

               Prohibited Models: L frame .357 magnum models 581, 586, 681, and 686 which do not have an "M" stamped above the model number or a "2" or higher number stamped after the basic three-digit model number, e.g., 581-2.

             c.    Sturm Ruger

               Prohibited Models: Those with serial numbers prefixed by the number 150.

         2.    Design and Calibers

             a.    A sworn member whose date of appointment is on or before 1 July 1991 will utilize a service revolver chambered in .38 Special or .357 Magnum caliber with double- and single-action capability and a solid-frame, swing-out cylinder with six cartridge chambers, hammer safety device, and hammer spur.

             b.    A sworn member whose date of appointment is after 01 July 1991 will utilize a service revolver chambered in .357 Magnum caliber, with double- and single-action

U04-02   Department Approved Weapons and Ammunition
© Chicago Police Department, July 2007

Current as of 14 October 2011:1117 hrs
Page 3 of 30

Miller 13 C 3225

FCRL 001204

capability and a solid-frame, swing-out cylinder with six cartridge chambers, hammer safety device, and a hammer spur.

   c.   The frame, barrel, and cylinder will be carbon or stainless steel.

3.   Barrel length will be four inches and conform to the manufacturer's original specifications.

4.   After the effective date of this directive, all revolvers acquired by Department members will have all exterior parts such as the frame, barrel, cylinder, hammer, and trigger of one finish. Refinishing the entire handgun or any component part (s) in either chrome or nickel plate is prohibited. Manufacturer-applied "Industrial Hard Chrome" and "Electroless Nickel" type factory finishes are approved. Weapons will not be altered beyond the manufacturer's original specifications including the surface finish.

5.   Sights may be either fixed or adjustable. Electrical and optical sights are prohibited.

6.   Handgrips will be constructed of wood, rubber, or synthetic material, and be brown or black in color or a combination thereof. They may be plain or checkered and, except for a manufacturer's name or trademark, will be without ornamentation. Handgrip adapters, if used, will be of white or black metal, or black hard rubber or synthetic material.

7.   No member will carry a service revolver with:

   a.   the hammer spur removed unless so designed by the manufacturer.

   b.   the frame, barrel, cylinder, internal/external parts, safety mechanisms, and surface finish altered beyond the manufacturer's specifications.

   c.   a detachable trigger shoe.

   d.   the surface engraved, etched, or inlaid with other than a personal alpha/numeric identifier unless approved by the Department.

8.   Sworn members will qualify with their prescribed revolvers in accordance with the Department directive which describes the Prescribed Weapon In-Service Training and Qualification Program.

B.   Alternate Prescribed Revolver

Sworn members assigned to citizen's dress and in administrative duty or who are off duty may carry an alternate prescribed revolver in lieu of the prescribed revolver. The revolver must meet the same specifications as a prescribed revolver, but may be:

1.   chambered in either .38 Special or .357 Magnum calibers.

2.   constructed with a:

   a.   frame and/or cylinder of an aluminum alloy.

   b.   frame, cylinder, and barrel of steel that has an empty weight of less than 21 ounces with standard factory handgrips.

   c.   double- and single-action or double-action-only capability.

   d.   spurless hammer, designed and produced by the manufacturer.

   e.   fully or partially shrouded hammer, designed and produced by the manufacturer.

   f.   cylinder with a loading capacity of either five or six cartridges.

   g.   barrel length less than four inches.

C.   Revolver Ammunition

1.   .38 Special caliber +P, 125 through 135 grain, jacketed hollow-point ammunition or .38 Special caliber +P, 158 grain lead, semi-wad cutter, hollow point ammunition will be used in the following revolvers:

   a.   Prescribed revolvers chambered either in .38 Special caliber or .357 Magnum caliber.

Miller 13 C 3225

FCRL 001205

E.  A member approved to use a conventional firing system pistol may replace that pistol with another of the **same manufacturer, model, and caliber** if that pistol is lost, stolen, or damaged so beyond repair that the manufacturer recommends the pistol be replaced.

> NOTE:  **Department members hired before 01 December 1991 who elect to carry an approved conventional firing system (CFS) semiautomatic pistol, whether on or off duty, may only do so if the weapon was registered by that Department member with the City of Chicago prior to 01 September 1992.**

F.  A Department member approved to use a striker-fired pistol will not alter the trigger pull from the standard factory trigger. Competition triggers of less than five pounds are prohibited.

G.  Semiautomatic pistols acquired by sworn members for duty use after the effective date of this directive will only be double action or striker fired.

H.  Sights may be fixed or adjustable.

I.  Handgrips will be constructed of wood, rubber, or synthetic material and be brown or black in color or a combination thereof. They may be plain or checkered and, except for a manufacturer's name or trademark, will be without ornamentation.

J.  Magazine(s) will be secured in a Department-approved magazine pouch. The magazine(s) will conform to the manufacturer's original specifications and will not extend beyond the base of the butt of the frame. A magazine with a finger extension floorplate that is a part of the original magazine is authorized.

K.  Uniformed sworn members and citizen's dress sworn members assigned to field duties will carry a minimum of one additional fully loaded magazine.

L.  No sworn member will carry an approved semiautomatic pistol that has:

　　1.  a detachable trigger shoe or added trigger shoe.

　　2.  been altered beyond manufacturers' original specifications including the surface finish. Only black, blue steel, nickel, chrome, satin, stainless steel, or a two tone combination of manufacturers' finish is allowed.

　　3.  a polymer frame with any finish other than black.

　　4.  a barrel length that has been altered from the original manufacturer's specifications.

　　5.  the surface engraved, etched, or inlaid with other than a personal alpha/numeric identifier unless approved by the Department.

M.  Semiautomatic pistols will be carried in Department-approved holsters.

N.  All uniformed sworn members assigned to field duty who carry a semiautomatic pistol will utilize a Department-approved firearm with a minimum barrel length of 3.5 inches.

O.  All citizen's dress Department members assigned to field duty who carry a semiautomatic pistol will utilize a Department-approved firearm with a minimum barrel length of 3.0 inches.

P.  Auxiliary Weapons - Restrictions

　　1.  A sworn member assigned to administrative duty or who is off duty is approved to carry/use an auxiliary semiautomatic pistol, as appropriate, in lieu of the prescribed semiautomatic pistol or alternate prescribed semiautomatic pistol, with the following provisions:

　　　　a.  The firearm will be registered with the City of Chicago.

　　　　b.  The sworn member will be required to successfully complete a familiarization, testing, and qualification course or a transition course as outlined in this directive. In addition, the member will be required to annually re-qualify with the auxiliary firearm.

　　　　c.  Auxiliary firearms will be carried in Department-approved holsters.

Miller 13 C 3225

FCRL 001208

2. When assigned to uniform or citizen's dress field duties, the auxiliary firearm will not be carried in lieu of the member's prescribed duty firearm.

NOTE: All Department members assigned or working administrative duties who elect to carry an approved auxiliary firearm will have their approved duty firearm available in the event that they are required to perform field duties.

IX. FIREARM TRANSITION PROCESS

A. Department members hired on or before 01 December 1991 who elect to transition from their prescribed revolver to a striker-fired or DAO semiautomatic firearm that they have not previously qualified with will be required to successfully complete a three-day transition course offered by the Education and Training Division.

B. Department members hired on or before 01 December 1991 who transition from their prescribed revolver to a DAO semiautomatic firearm and then elect to transition to a striker-fired firearm will be required to successfully complete a two-day transition course offered by the Education and Training Division.

C. Department members hired on or before 01 December 1991 who elect to transition from their prescribed revolver to a CFS weapon that has been registered with the City of Chicago prior to 01 September 1992 or to a DAO semiautomatic firearm and hold a current approved handgun certificate will be required to successfully complete a three-hour transition course offered by the Education and Training Division.

D. Department members hired on or before 01 December 1991 who elect to transition from their prescribed revolver to a CFS or DAO weapon that has been registered with the City of Chicago prior to 01 September 1992 and have previously qualified with the weapon but do not possess a current approved handgun certificate will be required to successfully complete a three-day transition course offered by the Education and Training Division.

NOTE: Department members hired on or before 01 December 1991 who elect to transition from their prescribed revolver to a semiautomatic firearm as their prescribed weapon will not be allowed to revert to the revolver as their prescribed weapon once they complete the transition process. However, Department members will be approved to utilize their revolver as an alternate prescribed weapon or auxiliary weapon upon completion of existing training.

E. Department members hired after 01 December 1991 who elect to transition to a striker-fired pistol as their prescribed semiautomatic pistol will be required to successfully complete a two-day transition course offered by the Education and Training Division.

F. Department members hired after the effective date of this directive who complete training and qualification with the striker-fired pistol and later elect to carry a Department-approved DAO semiautomatic pistol as their prescribed, alternate, or auxiliary weapon will not be required to attend the transition course. However, Department members who change manufacturers will be required to complete a three-hour training and qualification course.

G. Department members hired after the effective date of this directive who complete training and qualification with a DAO semiautomatic firearm and later elect to carry a striker-fired firearm as their prescribed, alternate, or auxiliary weapon will be required to complete a two-day course offered by the Education and Training Division.

Miller 13 C 3225

FCRL 001209

H.   Department members who elect to carry a DAO, striker-fire, or CFS semiautomatic pistol as an auxiliary or alternate weapon but do not elect to transition from their prescribed weapon must comply with all the requirements of the transition process and attend the appropriate training.

> **NOTE:**   **The Education and Training Division will notify Department members when the Firearm Transition Process is available. All transition courses will be available on a voluntary basis during off-duty hours.**

X.   **REPLACEMENT, TRANSFER, AND REGISTRATION OF FIREARMS; REPORTING OF LOST OR STOLEN FIREARMS/WEAPONS**

A.   LEGISLATION

1.   Chapter 430, Article 65 of the Illinois Compiled Statutes, known as the Firearm Owners Identification Card Act, states that no person may acquire or possess any firearm or firearm ammunition without having in his or her possession a current Firearm Owner's Identification Card (FOID).

2.   Provisions of this article do not apply to law enforcement officials while engaged in their official duties.

3.   However, based upon the language of the statute and case law, a law enforcement officer violates the Firearm Owner's Identification Card requirements if he or she is in possession of a firearm without a Firearm Owner's Identification Card while performing a task not related to his or her duties.

> **NOTE:**   For example, a law enforcement official who is shopping for personal groceries, regardless of duty status, is not engaged in the operation of his or her official duties, and therefore would violate the Firearm Owner's Identification Card requirements of Section 65/2 of The Firearms Owner's Identification Card Act.

B.   The Gun Control Act of 1968 (GCA), as amended by the Omnibus Consolidated Appropriations Act of 1997, makes it unlawful for any person convicted of a misdemeanor crime of domestic violence to ship, transport, possess, or receive firearms or ammunition. The GCA further prohibits persons from selling or otherwise disposing of a firearm or ammunition to any person known to have been convicted of a misdemeanor crime of domestic violence, or to anyone who they have reasonable cause to believe has been convicted of a misdemeanor crime of domestic violence. This prohibition does apply to all law enforcement officers.

C.   Prescribed Firearms/Temporary Replacement

1.   Temporary replacement of a prescribed firearm may be obtained if:

a.   the sworn member's prescribed firearm is lost, stolen, unserviceable, or has failed to pass inspection. With the approval of the unit/watch commander or the firearms range officer, the affected member may submit a request for a temporary replacement firearm and ammunition by submitting a To-From-Subject report approved by his or her unit commanding officer and all related documentation (such as case reports, gunsmith's repair receipts, purchase orders, etc.) to the Assistant Deputy Superintendent, Education and Training Division.

b.   the sworn member's prescribed firearm is to be examined by the Forensic Services Section. The member may request a temporary replacement of a prescribed firearm, if necessary, by:

(1)   generating a To-From-Subject report requesting the temporary replacement and obtaining the unit/watch commander's written approval.

(2)   submitting the approved To-From-Subject report, along with copies of the Tactical Response Report (CPD-11.377) and the Property Inventory Report

Miller 13 C 3225                                                    FCRL 001210

(CPD-34.523) listing the member's prescribed firearm, to the Assistant Deputy Superintendent, Education and Training Division.

2. A sworn member who has been issued a temporary replacement firearm will be responsible for the proper care, maintenance, and return of the firearm to the Education and Training Division. If a member must retain the replacement firearm for more than thirty days, the member will appear in person at the Education and Training Division with the loaned firearm and submit a To-From-Subject report with the unit/watch commander's approval explaining the need for an extension.

3. The Firearm Loan Receipt (CPD-63.344) will be prepared when a replacement firearm is issued.

D. Replacement Ammunition

1. Each district is supplied 200 of the following Department-approved duty ammunition cartridges:

   a. .38 Special +P,

   b. 9 mm,

   c. .40 caliber S&W,

   d. .45 caliber ACP.

   NOTE: Each district will be supplied with 50 rounds of OO Buck Shotgun Ammunition.

2. The watch commander is responsible for the security and issuance of this ammunition. Additional cartridges will be requested from the Equipment and Supply Section on a Material Requisition form (CP-GS-6).

3. Any member, regardless of assignment, may obtain replacement ammunition for Department-issued cartridges that are lost, stolen, damaged, defective, or expended in the line of duty.

4. Whenever the replacement of ammunition is necessary, the requesting member will submit a copy of a Tactical Response Report and/or other related documentation to the watch commander from the district of occurrence.

5. The watch commander will note the number and type of ammunition issued, sign his or her name, and enter his or her rank on the reverse side of the report(s). The report(s) will be forwarded to the issuing district commander.

6. Members will follow established material requisition procedures and submit copies of the Tactical Response Report and/or related documentation when requesting replacement of expended, damaged, lost, stolen, or defective Department ammunition.

E. Purchase of Firearms from a Dealer

1. A sworn member who elects to purchase a duty-related revolver, semiautomatic firearm, or high-capacity magazine and does not possess a valid FOID card, or who possesses a valid FOID card and requests a waiver of the required waiting period, will complete one copy of the Certifying Statement - Firearms form (CPD-11.702) and present it to the firearms dealer at the time of purchase.

   NOTE: Gun dealers are not obligated to waive the waiting period for members who do not possess a valid FOID card.

2. The Certifying Statement - Firearms form will be obtained from the member's unit of assignment.

3. The Certifying Statement - Firearms form will be retained by the firearm dealer as verification of the exempt status of the sworn member.

Miller 13 C 3225                                                                  FCRL 001211

F.      Sale or Transfer of Firearms Between Sworn Members

    1.      Department members must comply with all city, state, and federal laws before they sell, give, lend, or dispose of a firearm or other deadly weapon.

    2.      The sale and transfer of duty-related firearms from one sworn member to another sworn member does not require the buyer to possess an FOID card. However, an FOID card is required for the sale and transfer of all non-duty-related firearms.

    3.      A member buying or receiving a firearm will obtain a Firearms Purchase Authorization / Sworn Member form (CPD-31.220) from the Police Field Services Section, Records Inquiry: Customer Services Section, or Gun Registration Program.

G.      Duty-Related Firearms

    1.      The Firearms Purchase Authorization / Sworn Member form, prepared in triplicate, authorizes the transfer of duty-related firearms between sworn members without an FOID card.

    2.      The seller will complete the Dealer/Seller Section of the Firearms Purchase Authorization / Sworn Member form. The seller will retain the original and the buyer will retain a copy of this form for their records for a period of ten years from the date of transfer (430 ILCS 65/3).

    3.      The buyer will complete a Firearms Registration Application (CPD-31.562)

    4.      The buyer will forward one copy of the Firearms Purchase Authorization / Sworn Member form and a completed Firearms Registration Application to the Gun Registration Program.

H.      Non-Duty-Related Firearms

    1.      The original Firearms Purchase Authorization / Sworn Member form along with the member's valid FOID card will be presented to the seller. The seller will complete the Dealer/Seller Section of the form. The seller will retain the original and the buyer will retain a copy of the form for their records for a period of ten years from the date of transfer (430 ILCS 65/3).

    2.      The buyer will forward one copy of the Firearms Purchase Authorization / Sworn Member form and a completed Firearms Registration Application with the required **registration fee** to the Gun Registration Program.

    3.      Department members will not transfer a firearm and/or ammunition to a resident of the City of Chicago except in accordance with the provisions of Section 8-20-170 of the Municipal Code of Chicago. All state and federal laws will be abided by when transferring firearms. A member who transfers a firearm and/or ammunition will submit a To-From-Subject report to the commanding officer of the Gun Registration Program. Members will retain a copy of the report for their records. The To-From-Subject report will include:

        a.      the name and address of the person to whom the firearm and/or ammunition was transferred.

        b.      the date the transfer was made.

I.      City of Chicago Firearm Registration

    1.      All firearms located in the City of Chicago must be registered and, if appropriate, re-registered in accordance with the provisions of Chapter 8-20 of the Municipal Code of Chicago. It is the responsibility of the person owning or possessing a firearm to comply with these provisions.

    2.      Sworn members will re-register non-duty-related firearms annually at least sixty days prior to the expiration date indicated on the certificate. Peace officers are not required to annually re-register duty-related firearms.

    3.      Sworn members registering only duty-related firearms are exempt from the registration fee.

J.      Firearm Registration and Re-registration Procedures

    A Firearm Registration Application must be completed for each firearm to be registered and/or re-registered.

U04-02   Department Approved Weapons and Ammunition
© Chicago Police Department, July 2007

Current as of 14 October 2011:1117 hrs
Page 11 of 30

Miller 13 C 3225

FCRL 001212

1. Duty-Related Firearms Procedures

a. When registering duty-related firearms, members will comply with all of the instructions stated on the reverse side of the Firearm Registration Application. In addition, a member registering only a duty-related firearm(s) will:

(1) enter "CPD" and his or her unit number of assignment on the "A" and "B" portions of the application in the box entitled "Business Address."

(2) submit the completed Firearm Registration Application to the member's unit/watch commander.

(3) submit an Affidavit of Employment (CPD-31.563) with the Firearms Registration Application if the member is a probationary police officer.

(4) upon the return of the approved application from the unit/watch commander, forward the application via intradepartmental mail to the Gun Registration Program, Room 1043, Central Police Headquarters.

b. The unit/watch commander will review Firearm Registration Applications for duty-related firearms only to verify that:

(1) the named applicant is a sworn member of the Department.

(2) all instructions have been followed and that the necessary attachments have been submitted.

(3) the firearm listed on the application is a Department approved duty-related firearm.

(4) attest to the above facts by signing his or her name, star number, and unit of assignment in the appropriate space of the "C" portion of the application.

2. Non-duty-Related Firearms Procedures

a. When registering or re-registering non-duty-related firearms, members will comply with all of the instructions stated on the reverse side of the Firearm Registration Application.

b. Members registering a non-duty-related firearm will submit the completed Firearm Registration Application, a copy of their current FOID card, and the registration fee directly to the Gun Registration Section. Intradepartmental mail may be used. **Do not separate the Firearms Registration Application(s).**

c. Certificates of Registration for non-duty-related firearms will be returned directly to the registering member.

K. Reporting Requirements – Loss or Theft of Firearms / Weapons

1. Responsibilities of Members Reporting the Loss or Theft of Firearms / Weapons

a. If the loss or theft of a firearm or weapon occurs within the City of Chicago, the member will promptly report the incident to the Department. The member preparing the case report will:

(1) complete the appropriate case report in accordance with existing Department procedures.

(2) ensure that an Administrative Message Facsimile Network (AMFN) message is sent and that the AMFN message number is included in the narrative portion of the case report.

(3) mark the "Extra Copies Required" box with the notation "one copy to Gun Registration."

D.   Committee members who determine there is a need for a meeting will communicate with the Chairman. Committee meetings will convene upon notification from the Chairman during normal business hours where practicable.

E.   A sworn member of the Police Equipment Evaluation Team, Research and Development Division, will attend all meetings, serve as secretary to the committee, and provide official liaison between the committee and retailers, manufacturers, and other suppliers of weapons and related equipment.

F.   Committee affairs will be conducted only when a quorum of the membership is present. A quorum will consist of at least four committee members of which one will be the Chairman or Vice-Chairman. Issues will be voted upon by all the committee members.

G.   The Arsenal Committee functions as a subcommittee of the Uniform and Personal Equipment Policy Committee. The Chairman, Arsenal Committee, will report all committee affairs directly to the Chairman, Uniform and Personal Equipment Policy Committee.

Responsibilities of the Arsenal Committee include:

1.   development of weapon specifications for the Department.

2.   conducting research and evaluating weapons and/or ammunition for possible use by Department members.

3.   making recommendations to the Chairman, Uniform and Personal Equipment Policy Committee, relative to the adoption or discontinuation of weapons and/or ammunition for use by Department members.

XVI.   PRESCRIBED DUTY WEAPON LOCKING DEVICE

A.   The Department:

1.   requires sworn Department members to secure their **prescribed duty weapon** when the prescribed duty weapon is not on their person.

2.   strongly encourages sworn members to secure any/all other firearms which may be in their possession or under their control as mandated by Illinois Compiled Statute (ILCS) entitled "Firearms; Child Protection" (720 ILCS 5/24-9).

B.   Effective 1 January 2000, 720 ILCS 5/24-9 "Firearms; Child Protection" was enacted.

NOTE:   In essence, the statue states that a firearm must be secured when the likelihood exists that a minor under the age of 14 could gain unlawful access to the firearm. Department policy regarding the securing of a sworn member's prescribed duty weapon is more restrictive.

C.   Sworn Department members not carrying their prescribed duty weapon on their person and not having an alternate means to secure the prescribed duty weapon will place the Department-issued locking device on their prescribed duty weapon.

NOTE:   Sworn Department members may secure their prescribed duty weapon in a locked box/container or secured in another location that a reasonable person would believe will prohibit access to the prescribed duty weapon by unapproved individuals and meets the requirements of 720 ILCS 5/24-9.

Miller 13 C 3225

FCRL 001228

D. The Assistant Deputy Superintendent, Education and Training Division, will ensure that Department members receive annual instruction during the Prescribed Weapon In-Service Training and Qualification Program on proper procedures for securing their prescribed duty weapon.

Authenticated by:

Philip J. Cline
Superintendent of Police

06-183 KD/SRM

GLOSSARY TERMS:

1. **HBT (Hostage Barricade Team) Incident Coordinator**

   A specially trained sworn member who is responsible for the coordination of administrative matters involving the HBT Incident Program, who responds to the scene of an HBT incident and functions as an aide and advisor to the officer in charge.

2. **Active Resister**

   Includes subjects who secret themselves and fail to comply with sworn members' orders to reveal themselves.

3. **Police Carbine Operator Program**

   The overall program developed by the Department for the approval, procurement, training, security, issuance, use, and maintenance of Department-approved carbines.

4. **Carbine Operator Course**

   A voluntary five-day course members must initially pass to be qualified to participate in the Police Carbine Operator Program.

5. **Carbine Operator Requalification Course**

   A block of training required for members in the Police Carbine Operator Program. This course is taken subsequent to the Carbine Operator Course and must be completed to maintain qualification.

6. **Carbine Familiarization Course**

   A block of instruction relative to the safe handling, loading, and unloading of the carbine as well as placement and removal from gun racks and locks.

7. **Personal Carbine Operator Zeroing Course**

Miller 13 C 3225

FCRL 001229

b. Pain Compliance Techniques

Pain compliance consists of techniques designed to amplify nonimpact pressure and pain in order to increase the potential for controlling a subject. These techniques consist of applying pressure to pain sensors in the skin covering bone and joints (i.e., armbars and amplified wristlocks) to amplify pain.

c. Control Instruments

Control instruments are designed to amplify nonimpact pressure and pain in order to increase the potential for controlling a subject. These instruments are placed mainly on the pain sensors of the skin covering bone.

d. Oleoresin Capsicum (OC) Spray

Oleoresin capsicum is a highly inflammatory agent that occurs naturally in cayenne peppers. The use of OC spray is intended to increase control by disorienting the subject and interfering with the subject's ability to resist arrest.

Oleoresin capsicum is appropriate to use against two types of passive resisters only after the required authorization is received:

(1) occupant(s) of a motor vehicle who is engaging in passively resisting arrest, only after obtaining authorization from an on-scene supervisor of the rank of sergeant or above.

(2) unresponsive groups or crowds (e.g., demonstrators, sports championship celebrations, New Year's Eve, etc.), only after obtaining authorization from an on-scene supervisor of the rank of lieutenant or above.

2. Active Resister: a person whose actions attempt to create distance between that person and the member's reach. This type of resistance includes gestures ranging from evasive movement of the arm, through flailing arms, to full flight by running. In addition to the response options in Items III-A and III-B-1, the following response options are appropriate when dealing with an active resister:

a. Stunning

Stunning is diffused-pressure striking or slapping and is an attempt to increase control by disorienting the subject and interfering with the subject's ability to resist.

b. Oleoresin Capsicum (OC) Spray

Oleoresin capsicum is an appropriate force option against all active resisters without the need for any prior authorization.

c. Canines Used by Canine Handlers

A canine under the control of a canine handler is an appropriate force option when used consistent with the provisions of the Department directive entitled "<u>Canines as a Force Option</u>."

d. Taser

(1) The Taser is a device used to control and subdue a subject through the application of electrical impulses that override the central nervous system and cause uncontrollable muscle contractions. Two darts attached by thin wires are fired from a cartridge attached to the hand-held device. When both darts attach to the subject, a timed electrical impulse is applied to the subject at the control of the operator, the electrical impulse immobilizes the subject long enough for restraints to be applied.

*Exhibit K*

G03-02-02   Force Options
© Chicago Police Department, September 2002

Current as of 31 August 2011:1621 hrs
Page 2 of 4

Miller 13 C 3225

FCRL 001122



(2)     Only Department-issued Tasers may be used and only after the member has received Department-authorized training in their safe handling and deployment.

C.     Assailant: a subject who is using or threatening the imminent use of force against himself/herself or another person. The Use of Force Model categorizes assailants into three categories.

    1.     Actions are aggressively offensive without weapons. This type of assailant is one who places a member in fear of a battery and includes advancing on the member in a threatening manner or closing the distance between the assailant and the member, thereby reducing the member's reaction time. In addition to the response options in Items III-A and III-B, the following response options are appropriate when dealing with this type of assailant:

       a.     Direct Mechanical

       Direct mechanical techniques are hard, concentrating, striking movements such as punching and kicking, or powerful locks and pressures. These techniques can be combined with take-downs or pins against the ground or other objects.

       b.     Impact Weapons

       The baton is the member's primary impact weapon, which is used for striking. Impact weapons are designed to establish control by means of applying mechanical impact to a subject in order to disable elements of his or her skeletal structure. Members will avoid the use of flashlights, radios, or any item not specifically designed as a defensive weapon if the baton is reasonably available.

       c.     Impact Munitions

         (1)     Impact munitions are projectiles such as "drag stabilized sock rounds" or batons that are fired from shotguns with specially colored yellow stocks or tear gas launchers. These projectiles are intended to impact and incapacitate a potentially dangerous subject from a safe distance, thereby reducing resistance and gaining compliance while reducing the probability of serious injury or death.

         (2)     Only Department-issued impact munitions may be used and only after the member has received Department-authorized training in their safe handling and deployment.

    2.     Actions will likely cause physical injury. Included in this category of assailant may be a subject who is armed with a deadly weapon and the subject fails to disarm, thereby making the subject's actions likely to cause physical injury. The appropriate response options when dealing with this category of assailant are those listed in Items III-A, III-B, and III-C-1.

    3.     Actions will likely cause death or serious physical injury. An assailant in this category is one whose actions will likely cause death or serious physical injury to another person. In addition to the response options in Items III-A, III-B, and III-C-1, firearms and other deadly force are appropriate when dealing with an assailant whose actions will likely cause death or serious physical injury to another.

IV.     **POST-USE OF FORCE POSITIONING AND MONITORING**

    After gaining control of a subject, members will:

    A.     avoid sitting, kneeling, or standing on a subject's chest, which may result in chest compression, thereby reducing the subject's ability to breathe.

    B.     position the subject in a manner to allow free breathing. Whenever feasible, the subject will not be placed on the subject's stomach.

    C.     monitor an arrestee until transported to a secure location.

Miller 13 C 3225             FCRL 001123

Firearm Discharge in Incidents other than the Destruction of Animals

 5. allowed reasonable periods of time for personal necessities, meals, telephone calls, and rest.

III. **MEMBER'S RESPONSIBILITIES IN FIREARM DISCHARGE INCIDENTS**

A. Members who discharge a firearm in the destruction of an animal will follow the procedures described in the Department directive entitled "Other Weapon Discharge Incidents."

B. In any other instance where a member has discharged a firearm or has had gunfire directed at his or her person, the member, if physically capable, will:

 1. notify the Office of Emergency Management and Communications (OEMC) immediately and provide all relevant information.

 2. attend to all required emergency and security duties arising from the incident.

 3. provide Department members conducting the investigation with information required to effect arrests and fulfill immediate law enforcement necessities.

 4. inform the desk sergeant of the district of occurrence.

 5. remain on the scene, if not injured, and report to the watch commander from the district of occurrence upon his or her arrival.

 6. ensure that his or her firearm remains holstered and secured until it is submitted to Forensic Services Section personnel.

   **NOTE:** If the involved member is injured and needs to be relieved of his or her firearm prior to receiving medical treatment, the securing member will take possession of the firearm and duty belt and will ensure that the firearm remains holstered and secured.

 7. if disarmed during the firearm discharge incident, preserve the firearm as evidence, as it will be processed in compliance with the Department directive entitled "Crime Scene Processing."

 8. complete a Tactical Response Report (TRR) (CPD-11.377) and other reports at the location designated by the district watch commander responsible for the investigation.

   **NOTE:** When a member who has discharged a firearm is unable to complete the TRR for any reason, it will become the responsibility of a supervisor designated by the watch commander to prepare this report.

 9. attend the Round Table Panel Session as directed by supervisory personnel.

 10. contact the Professional Counseling Service via telephone within twenty-four hours of the incident to schedule a **mandatory** debriefing.

Miller 13 C 3225

FCRL 001192

Firearm Discharge in Incidents other than the Destruction of Animals

Page 4 of 12

NOTE: Members who are hospitalized as a result of their involvement in a firearm discharge incident will be contacted by a counselor from the Traumatic Incident Stress Management Program.

C. In any instance where a member has discharged a firearm outside the City of Chicago, the member will:

1. notify the local police agency and this Department's Operations Command.

2. ensure the submission of all reports connected with the incident, including a TRR and a To-From-Subject report, without unnecessary delay.

D. Any member, whether on or off duty, having knowledge of circumstances surrounding a firearm discharge incident or who has been fired upon will:

1. remain on the scene until released by those Department members conducting the investigation.

2. provide those Department members conducting the investigation with required information, assistance, and when requested, oral and written statements.

3. report to the watch commander in the district of occurrence.

E. Member's Statements and Interviews.

1. A member who is involved in a firearm discharge incident will provide an oral report to the person responsible for conducting the investigation without delay and outside the presence of any other individuals.

2. When a member who has discharged a firearm is notified that he or she must give a written statement or an oral statement in the presence of an observer, the interview may be postponed by the officer for a period of time not to exceed two hours.

IV. OFFICE OF EMERGENCY MANAGEMENT AND COMMUNICATIONS (OEMC) RESPONSIBILITIES

In all cases in which a member has discharged a firearm or has had gunfire directed at his or her person, the OEMC will:

A. dispatch sufficient patrol units to the scene.

B. determine if a medical emergency exists and if appropriate:

1. notify the Chicago Fire Department to dispatch emergency medical service units to the scene.

2. inform the emergency room of the receiving hospital.

C. assign a sergeant and a field lieutenant from the district of occurrence to the scene. In the event that a member has been injured, OEMC will assign a supervisor to respond to the medical facility treating the injured member.



Miller 13 C 3225

FCRL 001193

Firearm Discharge in Incidents other than the Destruction of Animals

B. The police shooting coordinator will:

1. personally respond to the scene of the investigation.

2. ensure the preservation of evidence and identification of witnesses.

3. assume responsibility for the follow-up investigation under the direction of the Detective Division area commander.

X. INDEPENDENT POLICE REVIEW AUTHORITY RESPONSIBILITIES

A. In all cases where a Department member has injured or killed a person by use of a firearm, IPRA will conduct a fair and impartial investigation into the circumstances surrounding the incident and make a determination as to whether the conduct of the member conformed to Department guidelines.

B. IPRA will investigate instances in which a Department member has been involved in a firearm discharge incident outside the Chicago Police Department's jurisdiction and the incident involves allegations of misconduct against the member.

C. In conducting these investigations, IPRA personnel will follow the procedures outlined in this directive.

XI. POST-FIREARM DISCHARGE PROCEDURES

A. Firearm Processing ✸✸

1. No member of any rank will handle, inspect, unload, or otherwise tamper with the involved member's firearm prior to the arrival of Forensic Services Section personnel. Unless the member was disarmed, the firearm will remain holstered and secured pending the arrival of the watch commander and Forensic Services Section personnel.

2. Forensic Services Section personnel will:

a. conduct the firearm inspection on scene in the presence of the watch commander.

b. identify the firearm discharged by the Department member by its make, model, serial number, and other identifiers.

c. examine the firearm discharged by the Department member to determine the type of cartridges used.

d. examine the surrounding area to identify the number and location of cartridge casings.

e. inventory all firearms discharged by the Department member in accordance with established inventory procedures in cases in which:

1. an individual has been injured or killed.

Firearm Discharge in Incidents other than the Destruction of Animals

Page 9 of 12

A.   proceed to the scene, assume command of the scene, and ensure that a complete and thorough investigation is conducted of the incident.

B.   ensure that all tasks delineated for lesser-ranking personnel have been or are being performed.

C.   designate the watch commander responsible for directing the preliminary investigation whenever the incident has occurred in more than one district.

D.   personally conduct an investigation into the circumstances surrounding the incident and make a preliminary determination as to whether the conduct of the member conformed to Department guidelines.

   NOTE:   The occurrence of less serious transgressions may be addressed by the procedures described in the Department directive entitled "Summary Punishment."

E.   inform the involved member that he or she is required to:

   1.   call the Professional Counseling Service within twenty-fours hours of the incident.

   2.   participate in the Traumatic Incident Stress Management Program.

F.   prepare the "Watch Commander/ADS Review" section of the TRR as follows:

   1.   For accidental weapon discharge incidents, as defined in the Department directive entitled "Use of Force Guidelines," in which no person was killed or injured, the On-Call Incident Commander will not be responsible for the completion of the "Watch Commander/ADS Review" section of the TRR but may advise the watch commander on the conduct of the investigation.

   2.   For all other weapon discharge incidents described in this addendum or when the involved member is the same rank or higher than the watch commander, the On-Call Incident Commander will review all TRR(s) for legibility and completeness and complete the "Watch Commander/ADS Review" section of the TRR. The On-Call Incident Commander will receive the original of the TRR (s) from the watch commander conducting the preliminary investigation.

G.   return the completed TRR(s) to the watch commander conducting the preliminary investigation.

H.   prior to the termination of the tour of duty, submit a report to the Assistant Superintendent , Operations outlining the pertinent facts of the investigation and forward a copy of that report to the Independent Police review Authority.

IX.   DETECTIVE DIVISION COMMAND RESPONSIBILITIES

   A.   In all cases in which a member has been injured or killed by gunfire or has injured or killed a person by use of a firearm, the Detective Division area commander will designate a Detective Division supervisor to serve as the police shooting coordinator for that incident.



FCRL 001198

Miller 13 C 3225

## STATE'S ATTORNEY'S OFFICE RESPONSE TO IPRA

**ATTENTION: INVESTIGATOR:**    K. Lyons
             **SUPERVISOR:**    _____
             **COORDINATOR:**    Andrea Stoutenborough

LOG#    1045896
U#    11-28
EO#    _____

Date :    2/24/12

### I. INITIAL INVESTIGATION REQUEST(S):

_____
_____
_____
_____
_____
_____

### II. ACCEPTED FOR FELONY PROSECUTION FOLL[...]

**YES:**_____                              N[...]

**REASON:**_____    No evidence of criminal intent or criminal activity by the officers;
complainant committed a home invasion and fled when police arrived and officers were
hanging in and out of the car trying to stop complainant from fleeing and he refused to
stop the car and crashed the car into buildings and telephone poles before the officers
fired their weapons;

_____
_____
_____


____Lynn McCarthy_____
**Assistant State's Attorney**
**Phone: (773) 674-2970**
**Fax:    (773) 674-2386**
**Email:** ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮



INDEPENDENT REVIEW
INFO WITNESSES
EVIDENCE-GUN
Bullets

FROM: **Christopher Anaele, Subpoena Officer**

Good morning/ afternoon Supervisor Maria Olvera and Inv. Kristi Lyons

The Legal Section received a subpoena from ASA Nina Ricci for a copy of **Log# 1045896**
(Reference: People v. Aaron Miller 11 CR 13372, please note that this is a criminal case and is
not necessarily associated with your case).

**We need from the Investigator:**
1.      Make sure all files are as current as possible.
2.      Provide the Legal Dept. with a copy of any and all materials associated with the
investigative file.
        -IPRA is required to produce all non-privilege materials. While the Legal Dept. is
        responsible for determining what materials are privileged, investigators are responsible
        for making sure that the Legal Dept. has what is, to the best of the investigator's
        knowledge, all the materials associated with the investigative file, including but not limited
        to all numbered and non-numbered attachments such as Summary Report (Digest),
        Investigator's Log, photos, recordings, and all items that are not and will not become
        attachments, such as handwritten/typed/draft note and/or documents.

**We need from the Supervisor:**
1.      Review the file and identify which, if any, materials you have a concern producing.
2.      Please also articulate the basis for your concern for each such item.
3.      Be sure all extension requests have been processed.
4.      If this case has been submitted to the SAO, please let us know the current status.

Please respond to this request via email by the end of business day on May 21, 2012.

Thank you for your timely assistance in this matter.

Miller 13 C 3225                                              FCRL 000694

## STATE'S ATTORNEY'S OFFICE RESPONSE TO IPRA

**ATTENTION: INVESTIGATOR:** ___K. Lyons___
                    **SUPERVISOR:** _____
                    **COORDINATOR:** Andrea Stoutenborough_____

**LOG#** ____1045896____
**U#** ____11-28_____
**EO#** _____

**Date :** ___2/24/12_____

### I. INITIAL INVESTIGATION REQUEST(S):

_____
_____
_____
_____
_____
_____
_____

### II. ACCEPTED FOR FELONY PROSECUTION FOLL

    **YES:** _____                **N**

    **REASON:**_____ No evidence of criminal intent or criminal activity by the officers;
complainant committed a home invasion and fled when police arrived and officers were
hanging in and out of the car trying to stop complainant from fleeing and he refused to
stop the car and crashed the car into buildings and telephone poles before the officers
fired their weapons;

_____
_____
_____

____Lynn McCarthy_____
**Assistant State's Attorney**
**Phone: (773) 674-2970**
**Fax:** **(773) 674-2386**
**Email:** ████████████████

Miller 13 C 3225                                      FCRL 000695


Exhibit U



INDEPENDANT REVEIW
Info Witnesses
EVIDence-Gun
Bullets

FROM: **Christopher Anaele, Subpoena Officer**

Good morning/ afternoon Supervisor Maria Olvera and Inv. Kristi Lyons

The Legal Section received a subpoena from ASA Nina Ricci for a copy of **Log# 1045896**
(Reference: People v. Aaron Miller 11 CR 13372, please note that this is a criminal case and is
not necessarily associated with your case).

**We need from the Investigator:**
1. Make sure all files are as current as possible.
2. Provide the Legal Dept. with a copy of any and all materials associated with the
investigative file.
      -IPRA is required to produce all non-privilege materials. While the Legal Dept. is
      responsible for determining what materials are privileged, investigators are responsible
      for making sure that the Legal Dept. has what is, to the best of the investigator's
      knowledge, all the materials associated with the investigative file, including but not limited
      to all numbered and non-numbered attachments such as Summary Report (Digest),
      Investigator's Log, photos, recordings, and all items that are not and will not become
      attachments, such as handwritten/typed/draft note and/or documents.

**We need from the Supervisor:**
1. Review the file and identify which, if any, materials you have a concern producing.
2. Please also articulate the basis for your concern for each such item.
3. Be sure all extension requests have been processed.
4. If this case has been submitted to the SAO, please let us know the current status.

Please respond to this request via email by the end of business day on May 21, 2012.

Thank you for your timely assistance in this matter.

Miller 13 C 3225                                           FCRL 000694